ISAIAH W. BERRY

*vs.*

M. F. DONOVAN & SONS, Employer, and Travelers Insurance Company, Insurer.

Cumberland.    Opinion November 10, 1921.

*While maritime law and admiralty jurisdiction are of the law of the United States, yet
a State may enact a statute which is optional or elective, and not mandatory,
which does not invade the limits of such Federal Law, but extends
to parties an option which if accepted may change their
rights and liabilities under the Federal Law.*

A state may neither broaden nor narrow the limits of maritime law and admiralty jurisdiction, that being of the law of the United States.

But the State of Maine in enacting the Workmen's Compensation Act has not presumed to encroach or trench upon a power which the people of the United States conferred upon the nation. The statute is optional or elective and not mandatory as to those within its purview.

Acceptance of the provisions of the law creates a contractual relationship between employer and employee in which they mutually substitute for rights and liabilities that the law would imply from the contract of hiring, other rights and liabilities, made effective by the superadded state sanctioned contract, in respect to the form of compensating industrial injuries.

A contract so founded is entitled to be respected as a contract universally.

On appeal by defendants. An appeal from a decree by a Justice of the Supreme Judicial Court in conformity with the finding of the Industrial Accident Commission that M. F. Donovan & Sons, or their insurance carrier, pay to plaintiff compensation in the sum of $15 per week from February 4, 1921, to February 24, 1921. The plaintiff was injured while in the employment of the defendant in unloading railroad ties from a vessel tied to one of the wharves in Portland harbor. The ties were being lifted from the vessel by means of a derrick installed on the vessel and swung out over the wharf and loaded onto trucks. Plaintiff was stationed on a platform

built on the wharf and while in the course of his employment was knocked from the platform to the wharf and in falling injured his right arm. There was no dispute about the facts. The contention of the defendant being that at the time the claimant was injured he was engaged in the performance of a maritime contract and was within the admiralty jurisdiction and that the Workmen's Compensation Act of the State of Maine is unconstitutional in so far as it purports to include matters within the admiralty jurisdiction. Appeal dismissed. Decree below affirmed.

Case is fully stated in the opinion.

*Harry E. Nixon,* for plaintiff.

*Leon V. Walker, and Verrill, Hale, Booth & Ives,* for defendants.

SITTING: CORNISH, C. J., SPEAR, HANSON, DUNN, DEASY, JJ.

DUNN, J. Mr. Justice Holmes, speaking for the court of which he is, in the case of *The Blackheath,* 195 U. S., 361, 49 Law Ed., 236, uses language worthy a sort of copyright. He says that "the precise scope of admiralty jurisdiction is not a matter of obvious principle or of very accurate history."

The power of the Congress to legislate respecting maritime contracts, is paramount. This prerogative finds origin in that provision of the Federal Constitution enabling the making of all laws necessary and proper for carrying into execution the powers vested by the supreme organic law in the government of the United States or its departments or officers. U. S. Con., Art. I, Sec. VIII. Among these powers are those of all cases of admiralty and maritime jurisdiction, (Idem. Art. III, Sec. II), and the regulation of commerce with foreign nations and among the several states, with uniformity. Idem. Art. I, Secs. VIII, IX. Exercising such control the first Congress conferred upon the District Courts of the United States "exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction, . . . . saving to suitors in all cases the right of a common law remedy where the common law is competent to give it." The Judiciary Act, Sept. 24, 1789, Chap. 20, Sec. 9; 1 U. S. Stat., 73-77. The saving clause has been retained through all revisions of the statute down to the present time. 36 U. S. Stat., 1091; Comp. Stat., 1916, Sec. 991 (3). Before passing on, it may be well to remark, by way of reminder, that the Congress in

its exception did not save to suitors a remedy in the common law courts, but saved to them a common law remedy. The Moses Taylor, 4 Wall., 411, 431, 18 Law Ed., 397. The distinction is the difference between an action and a remedy; a remedy does not necessarily imply an action. *Knapp* v. *McCaffrey*, 177 U. S., 638, 44 Law Ed., 921. A remedy, upon the authority of Bouvier, is the means employed to enforce a right, or to redress an injury. Remedies are usually by action, but by no means necessarily so. *Knapp* v. *McCaffrey*, supra.

The State of Maine, repeating and amending an earlier law, (Laws of 1915, Chapter 295), has enacted a Workmen's Compensation Act. Laws of 1919, Chapter 238. The statute defines the word "employee" as inclusive of every person in the service of another, other than casually, under any contract of employment whatsoever, excepting persons engaging in farm labor, as domestic servants, as masters of or seamen on vessels in interstate or foreign commerce, and officials of the State and its subdivisions, with exceptions, not material to be particularly stated here, regarding certain public officers and employees. The definition of "employer" is correspondingly comprehensive concerning those customarily employing five or more persons in the same business. The act is optional or elective. Acceptance of its provisions creates a contractual relationship between employer and employee. *Mathias Gauthier's Case*, 120 Maine, 73; *Mailman's Case*, 118 Maine, 172. Mutual acceptance by employer and employee of the provisions of the act adds a contract to the underlying contract of employment; the superadded contract having to do with the subject of the employer's responsibility for disabling or fatal personal injuries to the employee, should such befall the latter in the course of his employment. Express assent, and a compliance on his part with stated preliminary requirements, to the approval of the commission erected to administer the act, will bring an employer within the circle of the law. Non-action, that is to say, a failure to give notice of a desire to be left outside, impliedly places the employee of an assenting employer there. If an employer, other than one employing domestic servants, or engaging in agriculture or logging, elect to remain without the act, and he be named defendant in tort for personal injuries sustained by his employee, or from death resulting therefrom, the doctrines of assumption of risk and fellow service and the defense of contributory negligence will be

denied him. A liability is imposed on every assenting employer, to the exclusion of common law liability, and as well of liability under any statute other than the present one, to make or provide a compensation for injuries to his employee, regardless of fault as a factor or cause; excepting where injury or death is brought about by the wilful intention of the employee or his fellow, or results from the employee's intoxication while on duty; the employer's knowledge of the intoxication or of its likelihood affording defensive proposition. Self-insuring by the employer, on satisfactory proof of his pecuniary ability to pay the compensation and benefits provided for, and a deposit by him of security therefor, is permitted. Or, instead, he may furnish the insurance of an approved underwriter. The extent of liability is determined by the commission, or the chairman of the commission, as the particular case may come within the law. Findings of fact are final. A decision has the status of a judgment, and is enforceable by process of the Supreme Judicial Court. Laws of 1919, Chap. 238, Sec. 35. In addition to immediate medical or like treatment, compensation is to be granted, dating ten days from the accident, upon a graduated scale based upon loss of earning power, having regard to the previous wage and the nature and duration of the disability. Death benefits are measurable according to the dependency of designated surviving dependents.

In this situation of legal affairs, a vessel lay tied to a Portland wharf, in waters available to interstate commerce. Her freight was railroad ties. M. F. Donovan and Sons, Inc., a local stevedoring corporation, having contracted with the ship to discharge the cargo, hired the plaintiff, a longshoreman, to assist in the unloading. In performing his duties the plaintiff stood on a platform on the wharf. To this platform a sling, operated by a traveling derrick on the vessel, brought successive loads of the ties, from whence the ties were placed on a truck to be wheeled to another part of the wharf. On one of its journeys the sling struck the plaintiff; it knocked him from the platform to the wharf, and thereby incapacitated him temporarily for work. Donovan and Sons, Inc., was an assenting employer under the Workmen's Act. Its employee, deeming himself to be within that act, made application for the allowance of compensation. His application was granted. A Justice of this court entered statutory directed decree upon the award of the commission. Laws of 1919, Chap. 238, Sec. 34. *Hight* v. *Manufacturing Co.*, 116 Maine,

81.  Appeal brings the case here.  Laws of 1919, Chap. 238, Sec. 34. Both the stevedoring corporation and its insurance carrier strenuously contend that, in so far as it was sought to be applied to the facts of this case, the Workmen's Compensation Act contravenes the Constitution and the laws of the United States.  No other question is raised.

Admiralty and maritime jurisdiction, as these terms are used in this country, extend not only to all things done upon and relating to the sea, to transactions relating to commerce and navigation, to damages and injuries upon the sea, and all maritime contracts, torts and injuries, (*DeLovio* v. *Boit*, 2 Gall., 398), but still beyond the high seas to waters navigable therefrom.  *The Genesee Chief*, 12 How., 443, 13 Law Ed., 1058; *The Hine* v. *Trevor*, 4 Wall., 555, 563, 18 Law Ed., 451; *The Eagle*, 8 Wall., 15, 19 Law Ed., 365.

It seems almost superfluous to say that a state may neither broaden nor narrow the limits of maritime law and admiralty jurisdiction. *The J. E. Rumbell*, 148 U. S., 1, 37 Law Ed., 345; *Steamboat Orleans* v. *Phoebus*, 11 Pet., 175, 9 Law Ed., 677; *Butler* v. *Boston & Savannah Steamboat Company*, 130 U. S., 527, 32 Law Ed., 1017.  State laws cannot exclude a maritime contract from the domain of admiralty jurisdiction; they cannot alter the limits of that jurisdiction.  A state can only authorize the enforcement of rights by common law remedies, "or such remedies as are equivalent thereto."  *The Lottawanna*, 21 Wall., 558, 580, 22 Law Ed., 654.  Under the Judiciary Act it is open to a suitor to proceed in rem in the admiralty or in personam in the same jurisdiction, or, at his election, in the stead of going into admiralty, he may resort to his common law remedy either in the federal or in the state courts.  *Hine* v. *Trevor,* supra; *The Belfast*, 7 Wall., 624, 19 Law Ed., 266; *Taylor* v. *Carryl*, 20 How., 583, 15 Law Ed., 1028; *Schoonmaker* v. *Gilmore*, 102 U. S., 118, 26 Law Ed., 95; *Manchester* v. *Massachusetts*, 139 U. S., 240, 35 Law Ed., 159.  Of course he may not for the one thing properly prevail in both jurisdictions.  But personal suits on maritime contracts or for maritime torts are maintainable in state courts.  If, as a general proposition, no remedy is sought against the vessel itself, the case is not within the exclusive jurisdiction of the federal courts, but the state courts, administering common law remedies, have concurrent jurisdiction.  1 Cyc., 811; 1 C. J., 1253, Sec. 24.  A suit in personam by a sailor for his wages is maintainable at common law, and there-

fore may be brought in a state court. *Leon* v. *Galceran*, 11 Wall., 185, 20 Law Ed., 74. Proceedings in personam growing out of a collision may be so enforced. *Schoonmaker* v. *Gilmore*, supra. A seaman's wages are subject to attachment by trustee process. *White* v. *Dunn*, 134 Mass., 271. A suitor may have a remedy in a state court even if the admiralty courts have jurisdiction, when the right of action was created by a state statute enacted subsequently to the passage of the Judiciary Act. *American Steamboat Company* v. *Chace*, 16 Wall., 522, 21 Law Ed., 369; *Knapp* v. *McCaffrey*, supra. A state may pass laws enforcing the rights of its citizens which affect interstate commerce, but the laws of the state must stop short of regulating such commerce in the sense in which the Federal Constitution gives the exclusive jurisdiction of that subject to the Congress. *Sherlock* v. *Alling*, 93 U. S., 99, 23 Law Ed., 819; *Kidd* v. *Pearson*, 128 U. S., 1, 32 Law Ed., 346; *Pennsylvania Company* v. *Hughes*, 191 U. S., 477, 48 Law Ed., 268. A lien given by a state statute upon a vessel for materials furnished on the vessel's credit for, and by their use fairly forming part of her original construction, may be enforced against the vessel in a state court, even though she be engaging in interstate commerce. It is altogether probable that the vessel might otherwise become subject to a maritime lien, superior to the existing lien, enforceable in the admiralty. *The Winnebago*, 141 Fed., 945; *The Winnebago*, 205 U. S., 354, 51 Law Ed., 836. The distinction between such proceedings as are and such as are not invasions by a state of the exclusive admiralty jurisdiction is stated with refreshing clarity in the case of *Knapp* v. *McCaffrey*, supra. The court there says:

"If the cause of action be one cognizable in admiralty, and the suit be in rem against the thing itself, though a monition be also issued to the owner, the proceeding is essentially one in admiralty. If, upon the other hand, the cause of action be not one of which a court of admiralty has jurisdiction, or if the suit be in personam against an individual defendant, with an auxiliary attachment against a particular thing, or against the property of the defendant in general, it is essentially a proceeding according to the course of the common law, and within the saving clause of the statute of a common law remedy."

The exclusive jurisdiction granted by the Constitution to the United States courts has reference, as relating to the case at bar,

either to a libel directly against the vessel herself, or, since the comparatively recent decision of *Southern Pacific Co.* v. *Jensen*, 244 U. S., 205, 61 Law Ed., 1086, to a proceeding under the compulsory compensation act of a state against the owner of a ship plying in interstate commerce. It seems settled that, where the suitor is not proceeding in either of these ways, but prosecutes his action in personam, he may proceed in the courts of a state. *Knapp* v. *McCaffrey*, supra; *Rounds* v. *Cloverport*, 237 U. S., 303, 59 Law Ed., 966. In matters of contract the jurisdiction of admiralty depends upon the subject matter, viz., whether maritime or not. *Philadelphia Railroad Co.* v. *Towboat Company*, 23 How., 209, 16 Law Ed., 433; *Insurance Co.* v. *Dunham*, 11 Wall., 1, 20 Law Ed., 90. In tort the jurisdiction of the admiralty is not dependent upon the fact that the wrong or injury is inflicted by the vessel or on board the vessel; it depends upon whether the tort occurred upon the high seas or upon navigable waters; in shorter phrase, it is controlled by locality. *The Plymouth*, 3 Wall., 20, 18 Law Ed., 125; *Cleveland Terminal Company* v. *Steamship Company*, 208 U. S., 316, 52 Law Ed., 508; *Atlantic Transportation Co.* v. *Imbrovek*, 234 U. S., 52, 58 Law Ed., 1208.

In the case in hand the plaintiff is not assuming to enforce a suit in rem against the vessel, nor is he attempting to prosecute a suit in personam against her master or her owner, nor to extend a contractual relationship born of state legislation beyond an immediate party, or the insurance carrier of the immediate party, to the contract. His attitude is that he and his employer, enjoying constitutional freedom to contract, voluntarily put aside rights and obligations otherwise vouchsafed them, and therefor substituted the new form of compensating industrial injuries which the Legislature of their State has provided. Having done this, and injury having befallen the plaintiff out of and in the course of his employment, he insists that this court make their contract to square with the demands of real justice and plain common sense, that his rights in the dual citizenship of State and Union may not be unjustly infringed, and that the remedial legislation out of which the contract sprang may be judged by what it achieves in satisfying the righteous demand of society for a justice that is exact, equal and full.

The presented situation, as we see it and understand it, is this. First, a contract between a stevedoring corporation and a vessel to

discharge her cargo, the contract being of maritime nature; next, a contract between that stevedoring corporation and the plaintiff, having to do with his employment in the unloading; this, too, may be regarded as a maritime contract; finally, between the same stevedore and the same longshoreman, a contract about the contract that they already had made; the latest contract touching the employer's responsibility for possible injuries to the employee. This contract arose out of and by force of the State's statute, immediately upon the consummation of that contract made next before, but not without the express assent of the one and the implied assent of the other of the contracting parties. The contract relates to a maritime contract. It springs from an existing maritime contract. So does a sale by a merchant to fishermen about to go on a fishing voyage, of articles for their personal use; but such is not a maritime contract. *The Mary F. Chisholm*, 129 Fed., 814. A contract to build a ship would be potential of contemplated maritime contracts; yet a shipbuilding contract is not for the admiralty. *The Winnebago*, 205 U. S., 354, 51 Law Ed., 836. A shipping broker has no lien on a vessel, in admiralty, for services in procuring a charter party. *The Thames*, 10 Fed., 848. Workmen employed solely by the head stevedore must look to him for their wages, and have no lien upon the ship. *The Hattie M. Bain*, 20 Fed., 389. The contract entered into between this plaintiff and his employer is designed to be enforced only in the jurisdiction of that State whose law authorized its making. *Arizona Company* v. *Iron Company*, 119 Maine, 213. Plainly, if the longshoreman were entitled to enforce against his employer, an action of tort for personal injuries, it would seem that a common law remedy in personam would be available, whether the accident happened on the high seas or near shore in the navigable waters of this State. *The Hamilton*, 207 U. S., 398, 52, Law Ed., 264. As also admiralty would have jurisdiction. *Atlantic Transportation Company* v. *Imbrovek*, supra. The stevedore and its longshoreman, when the making of their original contract of hire was complete, must be held to have voluntarily agreed that if, in the course of the latter's employment, disabling or fatal injury should come to him, a compensation would be made in manner and amount as defined by a statute of their State, to the exclusion of liability therefor otherwise. Without such voluntary adoption the statute would be of no effect between the parties. Such voluntary adoption afforded a peculiar

remedy, entitled to recognition only in the State granting it, though it might apply to injury occurring elsewhere. No reason is perceived why it would not be quite as competent for them to fix upon a mode for determining when, where, and the extent to which money relief or compensation should be forthcoming in the event of accident, as it would be for them, after the happening of an accident, amicably to make adjustment of damages or to submit the question to the determination of a common law arbitration, or for the injured one to waive his right to damages, or for the other to make him an award therefor—no legal liability existing. In all this there is no attempt to hinder, restrain or regulate commerce; no effort to establish as against the vessel or her owner, a form of personal injury compensation or of death benefit given by a state statute, but unknown both to the admiralty and to the common law; no purpose to make asymmetry in the customs and ordinances of the sea. True, the compensation promised to be afforded finds reflection in the wage scale, but not more clearly than common law responsibility would be mirrored there were it not for the intervening contract. There is neither change nor attempt to change the contract to which the vessel is party; that remains the same in every court, maritime or common law. Employer and employee mutually substitute for rights and liabilities which the law would imply from the contract of hiring, other rights and liabilities made effective by a state sanctioned contract of their own making, entered into to remove the uncertainties of possible lawsuits. One may pause to inquire if this may not be what, in the opinion in *The Lottawanna,* supra, is referred to as an "equivalent of a common law remedy;" he may halt seriously to ask himself if, after all, this be other than a manifestation of the quality of marching forward, in all its sanctity and inviolability, inherent in the Constitution of his country, which makes that fundamental institution to keep step, as the common law too keeps step, with the van of the procession of society in safe and sane progress. Yet the question is not so much whether there be here the equivalent of a common law remedy, nor yet whether the Constitution of the United States, instinct with life and with the attributes of nationality, of its own impulsion moves forward, as the years roll around, to meet and regulate the changing circumstances of human affairs in America, but, rather, whether concerning a contract maritime in relationship, to which neither a vessel nor a vessel's owner be party,

there may be made another contract deserving of respect in the jurisdiction where made. In this rigorous climate, where the winds of common sense blow free and strong, that contract seems anchored secure within a safe legal haven.

The prevailing opinion in the case of *Knickerbocker Ice Company* v. *Stewart*, 253 U. S., 149, 64 Law Ed., 834, is advanced by the defendants as of relation to the issue presented here. The light to be got from that decision of the highest court in the land, speaking the last word on the question involved, is that the Congress exceeded its power to legislate in attempting, as against the owner of a barge, and in defiance of that owner's will, to permit the application of a compulsory compensation law of New York to injuries sustained within the admiralty and maritime jurisdiction, by the owner's employee; on the theory that such legislation is destructive of the essential harmony and uniformity that it was meant in the adoption of the Constitution that the federal government should provide and preserve in the rules concerning matters maritime. The decision must be accepted as conclusive. But that decision does not indicate the course of the present case. Under a compulsory statute the rights and liabilities of parties arbitrarily arise from the law. Under an elective statute they come into existence from contract. The distinction and the difference are too clear for exposition. And, what is the more, undoubtedly an independent contractor might be liable to his own employee, regardless of whether the vessel or her owner would be or not. A state legislature has no power to modify or abrogate the maritime law—that being of the law of the United States. *Workmen* v. *New York*, 179 U. S., 552, 45 Law Ed., 314. The Legislature of the State of Maine has not presumed to encroach or trench upon a power which the people of the United States conferred upon the nation. The Legislature has confined itself to the enactment of a law intended to operate only in those instances where its provisions are voluntarily contractually adopted, and operative solely by the procedure of the statute on which the adoption is bottomed. A contract founded on that law is of right entitled to the rights of a contract universally.

*Doey* v. *Howland Company*, 224 New York, 30, also relied upon in the brief of the defendants, involves the liability of an intermediate independent contractor to his employee, killed while at work on an ocean-going boat. The Industrial Commission of the State of New

York made an award of death benefit. It held that, upon the contract of hire, the state statute, without regard to action in such behalf by the parties themselves, superimposed a contract providing absolute yet limited liability for personal injuries. Bowing gracefully to recognition of ultimate authority, as that authority finds expression in *Southern Pacific Company* v. *Jensen,* supra, and in *Clyde Steamship Company* v. *Walker,* 244 U. S., 255, 61 Law Ed., 1116, the Court of Appeals of the State of New York eventually annunciated the ruling that the industrial commission had no authority in the case. Respecting that case and its decision, and regarding the other New York cases cited by the defendants, it is to be remembered that the relationship in each and all of them, as distinguishable from that in the instant case, was compulsory and not contractual. This means much. The Doey case, and the concomitant ones from New York, involve the question of a state legislature assuming to read a compensatory contract into another contract, whether the contracting parties of their volition would or no. Upon the contractual phase of the situation, the final arbiter of federal questions has not yet said. Until it shall say otherwise, if, indeed, it ever shall, our ideas of the nature of contracts readily lead us to the conclusion that the decision of the Chairman of the Accident Commission in this plaintiff's case is invulnerable to attack.

*Appeal dismissed.*
*Decree below affirmed.*