FOPPEN *v.* PETER J. FASE & CO.

1. MASTER AND SERVANT — WORKMEN'S COMPENSATION ACT — ADMIRALTY—JURISDICTION—HIGH SEAS.
   Where an employee on a fishing tug on the Great Lakes, whose duties were all to be performed on the high seas, was washed overboard 15 to 18 miles from shore, his dependents were not entitled to compensation for his death under the Michigan workmen's compensation act, since, under section 2, Art. 3, and section 8, Art. 1, of the United States Constitution, and section 9, judicature act of 1789 (1 U. S. Stat. pp. 76, 77), the Federal judicial power extends to all cases of admiralty and maritime jurisdiction, to the exclusion of State jurisdiction.

On application of State compensation acts to injuries within admiralty jurisdiction, see note in L. R. A. 1918C, 474.

On power of congress to permit application of State workmen's compensation laws to injuries within admiralty jurisdiction, see note in 11 A. L. R. 1155.

2. SAME—UNITED STATES STATUTES—CONSTITUTIONALITY—DECISION
OF FEDERAL SUPREME COURT BINDING ON STATE COURTS.
> The decision of the Supreme Court of the United States
> (253 U. S. 149) that the act of congress of October 6,
> 1917 (chap. 97, 40 U. S. Stat. p. 395), amending section
> 9 of the judicature act of 1789 so as to give to claimants
> the rights and remedies of the workmen's compensation
> laws of any State, is in conflict with the United States
> Constitution is binding upon the State courts.

Certiorari to Department of Labor and Industry. Submitted January 6, 1922. (Docket No. 50.) Decided June 17, 1922.

Jane Foppen and others presented their claim for compensation against Peter J. Fase & Company for the accidental death of their decedent in defendant's employ. From an order awarding compensation, defendant and the Travelers Insurance Company, insurer, bring certiorari. Reversed and order vacated.

*Vandeveer & Foster,* for appellants.

*Daniel F. Pagelsen,* for appellees.

FELLOWS, C. J.   The defendant employer is a copartnership engaged in commercial fishing out of Grand Haven, operating the tug "Alice" which is registered at that port. Plaintiffs' decedent worked for some time on this boat. On March 12, 1921, while returning from the fishing grounds, and when 15 to 18 miles from shore, he was missed. While no one saw the accident it is doubtless true that he was washed overboard, there being a considerable sea running. Compensation was awarded plaintiffs as dependents, and the case is brought here for review, and the argument is addressed to the one question of whether the workmen's compensation act is in conflict with section 2 of article 3 of the Federal Constitution, which extends the Federal judicial power to all cases

of admiralty and maritime jurisdiction, taken in connection with section 8 of article 1 granting the power to congress to make all laws necessary to the execution of the power vested in the general government—whether the matter is one for State or Federal control under the Federal Constitution.

In the recent case of *Crane* v. *Leonard, Crossette & Riley*, 214 Mich. 218, we held that the dependents of the employee were not precluded from recovery because the employee's death occurred outside the State when he was within the ambit of his employment. But that case did not have in it the question here involved of conflict of State and Federal authority. We do not understand it to be here claimed that the accident occurred beyond the boundary of the State. What is claimed is that this accident occurred on Lake Michigan, which is upon the high seas, over which the admiralty and maritime jurisdiction of the Federal government extends to the exclusion of State jurisdiction, and that State legislation in conflict with the superior mandate of the Federal Constitution must fall before it.

In the leading case of *The Propeller Genesee Chief* v. *Fitzhugh*, 12 How. (U. S.) 443, the court had before it the constitutionality of an act of congress extending admiralty jurisdiction over the Great Lakes. The act was sustained. In the course of the opinion, written by Chief Justice Taney, it was said:

"If this law, therefore, is constitutional, it must be supported on the ground that the lakes and navigable waters connecting them are within the scope of admiralty and maritime jurisdiction, as known and understood in the United States when the Constitution was adopted.

"If the meaning of these terms was now for the first time brought before this court for consideration, there could, we think, be no hesitation in saying that the lakes and their connecting waters were embraced in

them. These lakes are in truth inland seas. Different States border on them on one side, and a foreign Nation on the other. A great and growing commerce is carried on upon them between different States and a foreign Nation, which is subject to all the incidents and hazards that attend commerce on the ocean. Hostile fleets have encountered on them, and prizes been made; and every reason which existed for the grant of admiralty jurisdiction to the general government on the Atlantic seas, applies with equal force to the lakes. There is an equal necessity for the instance and for the prize power of the admiralty court to administer international law, and if the one cannot be established neither can the other."

Numerous other cases holding that the admiralty and maritime jurisdiction extends to the Great Lakes and their connecting waters might be cited but we content ourselves with referring to but one, *United States* v. *Rodgers,* 150 U. S. 249 (14 Sup. Ct. 109). This case involved an assault with a dangerous weapon committed on the steamer Alaska while in the Detroit river. The Federal jurisdiction was upheld in an able and exhaustive opinion written by Mr. Justice Field, during the course of which he took occasion to refer to the early case of *People* v. *Tyler,* 7 Mich. 161 (74 Am. Dec. 703), in which this court denied admiralty jurisdiction of the United States under similar circumstances. Justice Field points out that this court was in error in its holding in the *Tyler Case.* It must be taken as settled that these great inland seas, the Great Lakes, are a part of the "high seas" over which the admiralty jurisdiction of the Federal government extends. We so recognized the law to be in *Thornton* v. *Car Ferry Co.,* 202 Mich. 609, where we followed the holding of the Supreme Court of the United States in *Southern Pacific Co.* v. *Jensen,* 244 U. S. 205 (37 Sup. Ct. 524, L. R. A. 1918C, 451, Ann. Cas. 1917E, 900). In the *Jensen Case* the deceased was a stevedore engaged in operating an electric truck

used in unloading the steamship El Oriente then berthed at the pier and lying in the navigable waters of the United States. Compensation was awarded his dependents under the New York act. The court of appeals sustained the award (*Jensen* v. *Southern Pacific Co.*, 215 N. Y. 514 [109 N. E. 600, L. R. A. 1916A, 403, Ann. Cas. 1916B, 276]). The case was twice argued in the Supreme Court of the United States and was reversed. While the deceased was not employed as a seaman it was held that his contract of employment was a maritime contract and that the work in which he was engaging when the accident occurred was maritime in its nature and it was said:

"Exclusive jurisdiction of all civil cases of admiralty and maritime jurisdiction is vested in the Federal district courts, 'saving to suitors, in all cases, the right of a common-law remedy, where the common law is competent to give it.' The remedy which the compensation statute attempts to give is of a character wholly unknown to the common law, incapable of enforcement by the ordinary processes of any court and is not saved to suitors from the grant of exclusive jurisdiction."

The *Jensen Case* was followed in *Clyde Steamship Co.* v. *Walker*, 244 U. S. 255 (37 Sup. Ct. 545).

After the opinions in the *Jensen* and *Walker Cases* were handed down, congress by amendment added the following words to section 9 of the judiciary act of 1789:

"And to claimants the rights and remedies under the workmen's compensation laws of any State (act of October 6, 1917, chap. 97, 40 U. S. Stat. p. 395)."

This was evidently intended to obviate the effect of these decisions. In the *Thornton Case* we held this act was not retroactive.

In *Knickerbocker Ice Co.* v. *Stewart*, 253 U. S. 149 (40 Sup. Ct. 438, 11 A. L. R. 1145), the court had

before it the validity of the act of congress of October 6, 1917, and it was declared to be in conflict with the Constitution. Mr. Justice McReynolds, who wrote the prevailing opinion, first considers the *Jensen Case.* He then takes up the case of *Chelentis* v. *Luckenbach S. S. Co.*, 247 U. S. 372 (38 Sup. Ct. 501), in which the plaintiff sought to recover for injuries received while on the steamship "J. L. Luckenbach," as he claimed, through the negligence of the employer and in which case it was held that the general maritime law controlled. Justice McReynolds then considers the case of *Union Fish Co.* v. *Erickson*, 248 U. S. 308 (39 Sup. Ct. 112), in which it was held that the statute of frauds of the State of California could not be considered in an action brought by the master against the owner of a vessel for services to be performed principally upon the sea, and says:

"As the plain result of these recent opinions and the earlier cases upon which they are based, we accept the following doctrine: The Constitution itself adopted and established, as part of the laws of the United States, approved rules of the general maritime law and empowered congress to legislate in respect of them and other matters within the admiralty and maritime jurisdiction. Moreover, it took from the States all power, by legislation or judicial decision, to contravene the essential purposes of, or to work material injury to, characteristic features of such law or to interfere with its proper harmony and uniformity in its international and interstate relations. To preserve adequate harmony and appropriate uniform rules relating to maritime matters and bring them within control of the Federal Government was the fundamental purpose; and to such definite end congress was empowered to legislate within that sphere.     *     *     *

"Having regard to all these things, we conclude that congress undertook to permit application of workmen's compensation laws of the several States to injuries within the admiralty and maritime jurisdiction; and to save such statutes from the objections pointed

out by *Southern Pacific Co.* v. *Jensen.* It sought to authorize and sanction action by the States in prescribing and enforcing, as to all parties concerned, rights, obligations, liabilities and remedies designed to provide compensation for injuries suffered by employees engaged in maritime work.

"And so construed, we think the enactment is beyond the power of congress." * * *

In the recent case of *Western Fuel Co.* v. *Garcia,* U. S. Adv. Ops. 1921-22, p. 96 (42 Sup. Ct. 89), these cases were cited with approval. And in *State Industrial Commission* v. *Nordenholt Corp.,* U. S. Adv. Ops 1921-22, p. 567, it was said:

"When an employee working on board a vessel in navigable waters, sustains personal injuries there, and seeks damages from the employer, the applicable legal principles are very different from those which would control if he had been injured on land while unloading the vessel. In the former situation the liability of employer must be determined under the maritime law; in the latter, no general maritime rule prescribes the liability, and the local law has always been applied."

Numerous decisions of State courts will be found which are not in accord with these holdings; many of them are well reasoned. But the question is a Federal one and we are bound by the holdings of the United States Supreme Court. Decedent's contract of employment was maritime in its nature; it was to be performed only on the high seas. He had no duties to perform on shore. In the *Thornton Case* we followed the Federal holdings and so we must do in this case. In that case the question of estoppel was urged as it is here urged. We did not then regard it as applicable and did not discuss it. We do not regard it as applicable here. The question is one of the jurisdiction of the State over the subject-matter. Nor do we regard the question of the State's power

to preserve game and fish of importance. Undoubtedly the State may legislate upon the subject of fishing but the workmen's compensation law is not legislation of that character.

The award must be vacated.

WIEST, CLARK, BIRD, SHARPE, MOORE, and STEERE, JJ., concurred.

The late Justice STONE took no part in this decision.