## MARYLAND CASUALTY COMPANY *v.* GRANT.

No. 7065.   OCTOBER 19, 1929.   REHEARING DENIED NOVEMBER 15, 1929.

*J. T. Colson,* for plaintiffs in error.

*J. T. Powell, Levi O'Steen,* and *Krauss & Strong,* contra.

GILBERT, J.   Rebecca Grant filed application to the Industrial Commission of Georgia, for an award of compensation for the death of her husband, Howard Grant.   She alleged the husband was an employee of the Glynn Canning Company, of Brunswick, engaged in "catching, canning, and packing oysters, shrimp, prawn, and other sea foods for retail and wholesale markets;" that it operated boats for that purpose; that the husband was captain and fisherman on defendant's boat, the "J. B. A. Haas," on January 14, 1926, the date of his death; that he had been in the employment of said company for more than twenty years; that on said date, while off Cumberland Island, said husband was in the act of pulling in a net, there being on said boat one helper, when from strain some "vital part" of his body broke loose; that he lay down in the boat, complaining, and died near 12 o'clock that night.   Commissioner L. J.

Kilburn heard the evidence, a part of which was that said boat fished off the various islands off the Brunswick coast, Grant hiring his own helper; that on the trip in question several days were used, the boat putting in at Fernandina, Florida, each night; that on the night Grant died following said injury, he was transferred to another boat at Fernandina and sent to Brunswick. Holding that there was evidence to show that Grant operated with a boat rented from said canning company which simply bought his catch, Commissioner Kilburn denied compensation, on the ground that Grant was not a servant of said company. An appeal was taken to the entire commission, which, after reviewing the case, awarded Rebecca Grant the sum of $7.34 a week for 300 weeks from said death, and funeral expenses of $100, said award being against the Glynn Canning Company, employer, and the Maryland Casualty Company, insurance carrier. The decision of the commission recites: "Two questions were presented and argued before the commission: First, was decedent an independent contractor or an employee? Second, did his death result from an accident arising out of and in the course of his employment, or did it result from natural causes?" The canning company and insurer appealed from the commission's judgment to the superior court of Glynn County, specifically raising, among many points, the one that no Georgia court or tribunal had jurisdiction, because the entire matter was within the maritime jurisdiction of the United States and controlled entirely by the maritime law. The superior court upheld the commission, and appellants sued out a writ of error to the Court of Appeals of Georgia, which affirmed the judgment. Upon application this court granted a writ of certiorari directed to the Court of Appeals, to review that court's judgment. The only question raised in the petition for certiorari is whether the Court of Appeals erred in holding, that, "Although a part of the contract was to be performed in navigable waters, an injury received by the employee while out on a fishing expedition in navigable waters, where the injury arose out of and in the course of the employment, is compensable under the workmen's compensation act," because all relations between the decedent and the canning company were exclusively within the maritime jurisdiction of the United States and without the jurisdiction of any Georgia tribunal, the injury having occurred on the high seas and when said boat was sailing from the port of a foreign State,

Florida. The petition for certiorari raises no question save that of jurisdiction.

■ Howard Grant's employment was maritime and pertained to commerce. It was incident to the business of the Glynn Canning Company, whose business was the catching of sea food from navigable waters and selling it wholesale and retail. The constitution of the United States, art. 3, sec. 2, par. 1 (Civil Code of 1910, § 6667), declares that the judicial power of the United States shall extend "to all cases of admiralty and maritime jurisdiction." The language, "shall extend . . to all cases of admiralty and maritime jurisdiction," imports an absolute and exclusive grant of power. Such has been the construction of the Supreme Court. Robertson v. Baldwin, 165 U. S. 275, 279 (17 Sup. Ct. 326, 41 L. ed. 715); Martin v. Hunter, 1 Wheat. 304 (4 L. ed. 97); The Moses Taylor, 4 Wall. 411 (18 L. ed. 397). Const. of U. S. Annotated, 1923 (Senate Pub. Doc.), 423. As is well stated in the last-mentioned publication: "Jurisdiction is conferred on the Federal courts in admiralty, because, as the seas are the joint property of the nations, the jurisdiction is essentially national, and because of their nature such cases are closely connected with the grant of the commerce power. The jurisdiction is not restricted to admiralty, but includes all maritime jurisdiction. The constitutional provision for Federal jurisdiction refers to a system of law operating uniformly in the whole country, and regard must be had to our legal history, constitution, legislation, customs, and adjudications. The admiralty jurisdiction was not intended to be as limited as it was in England at the time of the adoption of the constitution, and it was to guard against a narrow construction of the word 'admiralty' that 'maritime' was added." See cases there cited. In Southern Pacific Co. v. Jensen, cited supra, Mr. Justice McReynolds enunciated the "uniformity" principle which has since been generally accepted and applied in determining the validity of legislation affecting the jurisdiction of cases involving admiralty and maritime law. He said: "No such legislation is valid if it contravenes the essential purpose expressed by an act of Congress, or works material prejudice to the characteristic features of the general maritime law, or interferes with the proper harmony and uniformity of that law in its international and interstate relations." In that case the employee, Moses LaCasse, was injured

while repairing a vessel moored to the dock, and reference is made to the report thereof for a full statement of the facts and authorities cited. Subsequently to that decision an act was passed by the Congress for the purpose of amending the judiciary act, intending to modify the ruling made. The act of Congress provided: ". . saving to suitors in all cases the right of a common-law remedy where the common law is competent to give it, and to claimants the rights and remedies under the workmen's compensation law of any State." This statute was held unconstitutional, in the case of Knickerbocker Ice Co. v. Stewart, 253 U. S. 149 (40 Sup. Ct. 438), on the ground that Congress could not delegate to the State its power with reference to admiralty, and that such delegation would destroy the harmony and uniformity which the constitution contemplated, and would defeat the very purpose of the grant. The Congress again attempted by statute to modify the Jensen decision, and this statute also was held unconstitutional on the same ground. State of Washington v. Dawson, 264 U. S. 219 (44 Sup. Ct. 302, 68 L. ed. 646). In Grant Smith-Porter Ship Co. v. Rohde, 257 U. S. 469 (42 Sup. Ct. 157), the Supreme Court held that an employee working as a carpenter, who was injured on board a vessel which had been launched but was not completed, could recover under the State workmen's compensation act. The court said: "Neither Rohde's general employment nor his activities at the time had any direct relation to navigation or commerce," and "under such circumstances regulation of the rights, obligations, and consequent liabilities of the parties, as between themselves, *by a local rule,* would not *necessarily* work material prejudice to any characteristic feature of the general maritime law, or interfere with the proper harmony or uniformity of that law in its international or interstate relations." This ruling was followed in Millers'· Indemnity Underwriters v. Braud, 270 U. S. 59 (46 Sup. Ct. 194). And see Alaska Packers Association v. State Industrial Commission of California, 276 U. S. 467 (48 Sup. Ct. 346), in which a person was employed by a fishing and canning company as a seaman, fisherman, and for general work in and about a cannery. He was injured after the fishing season was over, while standing on the shore and endeavoring to push a stranded fishing boat into navigable waters for the purpose of floating it to a near-by dock where it was to be lifted out and stored for the winter. It was held that the injury, if within

the admiralty jurisdiction, was of such a local character as to be cognizable under a State compensation law. Tyler v. Industrial Commission, 25 Ohio App. 444 (158 N. E. 586), is very close in its facts to the present case. There a person was employed on a fishing boat upon the navigable waters of Lake Erie, for the purpose of lifting nets and loading fish into the boat from those nets, to be transported back to the fish-house and there unloaded. It was held that the employment related directly to commerce and navigation; that the rights and liabilities of the parties, as to the question of liability for his death occurring while on such navigable waters, were therefore controlled by the admiralty law. In Foppen v. Peter J. Fase & Co., 219 Mich. 136 (188 N. W. 541), where one employed on a fishing-tug on Lake Michigan was washed overboard while returning from the fishing grounds, his contract was held maritime, and the case was held within the admiralty jurisdiction, and not within the compensation act of Michigan. And in Leszczymski v. Andrews Radel Oyster Co., 102 Conn. 511 (129 Atl. 539), Linsky was a deck-hand, and one of the crew employed on a boat engaged in dredging oysters. At the finish of a day's work, the boat was docked at the foot of Pembroke street, Bridgeport, Conn., in navigable water of the United States. During the night Linsky fell from the hatch, where he was sleeping, into the water, and was drowned. It was held that he was engaged under a maritime contract and that the workmen's compensation act, though elective in character, can not constitutionally apply to maritime injuries. In Northern Coal & Dock Co. v. Strand, 278 U. S. 142 (49 Sup. Ct. 88), the business of the company was mining, hauling, and selling coal, in which it maintained a dock on Superior Bay, Wisconsin, where it received and unloaded coal brought by vessels from other ports. It regularly employed men who went upon the dock and upon the vessels made fast thereto and unloaded them as directed. While engaged in such duties Strand was killed. His widow applied to the Industrial Commission of Wisconsin, for an award against the employer and the Insurance Company. The commission found for the applicant, and held that the employer and the deceased were subject to the State compensation act. The case finally reached the Supreme Court. That court held: "Strand's employment contemplated that he should labor both upon the land and the water. When killed, he was doing longshore or stevedore

work on a vessel lying in navigable waters, according to his undertaking. His employment, so far as it pertained to such work, was maritime; the tort was maritime; and the rights of the parties must be ascertained upon a consideration of the maritime law. Southern Pacific Co. v. Jensen, 244 U. S. 205, 217 (supra); State of Washington v. Dawson, 264 U. S. 219 (supra). Originally that law afforded no remedy for damages arising from death: but we have held that it might be supplemented by State death statutes, which prescribe remedies capable of enforcement in court. Western Fuel Co. v. Garcia, 257 U. S. 233, 242 (42 Sup. Ct. 89, 66 L. ed. 210). We have also held that State statutes providing compensation for employees through commissions might be treated as amending or modifying the maritime law in cases where they concern purely local matters, and occasion no interference with the uniformity of such law in its international and interstate relations. Grant Smith-Porter Ship Co. v. Rohde, 257 U. S. 469 (42 Sup. Ct. 157, 66 L. ed. 321, 25 A. L. R. 1008); Millers' Underwriters v. Braud, 270 U. S. 59, 64, 46 Sup. Ct. 194, 70 L. ed. 470); Smith v. Taylor, 276 U. S. 179 (48 Sup. Ct. 228, 72 L. ed. 520). The unloading of a ship is not a matter of purely local concern. It has direct relation to commerce and navigation, and uniform rules in respect thereto are essential. The fact that Strand worked for the major portion of the time upon land is unimportant. He was upon the water in pursuit of his maritime duties when the accident occurred."

The latest decision of the Supreme Court, so far as we are aware, is London Guarantee &c. Co. v. Industrial Accident Commission, 279 U. S. 109 (49 Sup. Ct. 296). There the court reviewed an award made by the Industrial Accident Commission of California. The award was made for the burial expenses of one Brooke, who was a minor employed on a boat of Morris Pleasure Fishing Inc. He was drowned while nearing a drifting vessel in an attempt to bring her back to anchorage after she had broken from her moorings and gone adrift. The vessel on which he was employed was a pleasure boat used to take excursionists for deep-sea fishing in ocean fishing-grounds near Santa Monica Bay. The Supreme Court held that it was a case falling within the admiralty jurisdiction, and that the State courts had no jurisdiction.

In Western Fuel Co. v. Garcia, supra, the injury occurred in

Puget Sound; and in Washington v. Dawson, supra, in San Francisco Bay.

In the Grant Smith-Porter case, supra, the injury occurred on the Williamette, a navigable river within the State of Oregon, and the question arose as to whether maritime jurisdiction extended to such navigable river. It was held that it did, although it was also held that the workmen's compensation law applied because Rohde's employment was not maritime. "Admiralty and maritime jurisdiction, as these terms are used in this country, extend not only to all things done upon and relating to the sea, to transactions relating to commerce and navigation, to damages and injuries upon the sea, and all maritime contracts, torts, and injuries (De Lovio v. Boit, 2 Gall. 398, Fed. Cas. No. 3776), but still beyond the high seas to waters navigable therefrom (The Genesee Chief v. Fitzhugh, 12 How. 443, 13 L. ed. 1058; The Hine v. Trevor, 4 Wall. 563, 18 L. ed. 453; The Eagle, 8 Wall. 15, 19 L. ed. 365). It seems superfluous to say that a State may neither broaden nor narrow the limits of maritime law and admiralty jurisdiction. The J. E. Rumbell, 148 U. S. 1 (37 L. ed. 345, 13 Sup. Ct. R. 498); Orleans v. Phoebus, 11 Pet. 175 (9 L. ed. 677); Butler v. Boston S. Co., 130 U. S. 527 (32 L. ed. 1017, 9 Sup. Ct. R. 612). State laws can not exclude a maritime contract from the domain of admiralty jurisdiction; they can not alter the limits of that jurisdiction." Berry v. Donovan, 120 Me. 457 (115 Atl. 250, 25 A. L. R. 1024). Indeed in no case, so far as we have been able to extend our investigation, which has been painstaking, has any question been made as to whether the injury occurred within the three-mile limit in the open seas. Upon the contrary the universal statement has been merely whether or not it occurred in navigable waters, whether upon the open seas or navigable lakes or navigable rivers.

For an elaborate and instructive discussion of the whole question of the jurisdiction in such cases reference is made to Grant Smith-Porter Ship Co. v. Rohde, supra; State Industrial Commission of N. Y. v. Nordenholt Corp., 259 U. S. 263 (42 Sup. Ct. 473, 66 L. ed. 933, 25 A. L. R. 1013); Newham v. Chile Exploration Co., supra; Berry v. Donovan, supra; State of Washington v. Dawson, 122 Wash. 572 (211 Pac. 724); s. c. 264 U. S. 219 (supra). And see 24 Illinois Law Review, 332; 27 Michigan Law

Review, 191, 945; 21 Id. 449. So it seems that under the decisions of the Supreme Court, construed together, if the subject is one of purely local concern and will work no material prejudice to the harmony and uniformity of the general body of maritime law, a recovery may be had in the State courts under the workmen's compensation law. All decisions of the Supreme Court concur in the obviously fixed rule that "one thing, however, is unquestionable; the constitution must have referred to a system of law coextensive with, and operating uniformly in, the whole country. It certainly could not have been the intention to place the rules and limits of maritime law under the disposal and regulation of the several States." The Lottawanna, 88 U. S. (21 Wall.) 558 (22 L. ed. 654). This was approved in Union Fish Co. v. Erickson, 248 U. S. 308, 313 (39 Sup. Ct. 112, 63 L. ed. 261).

Under the facts of the case the duties performed by the deceased, Howard Grant, were not of a purely local concern. His duties were incident to the general scheme and purpose of the commercial transactions carried on by Glynn Canning Company, and the injury happened while Grant was strictly engaged in his duty as a fisherman in navigable waters. The case, therefore, is within the general rule laid down by the Supreme Court of the United States as falling under the maritime law exclusively within the jurisdiction of the Federal courts.

■ The second headnote does not require elaboration.

*Judgment reversed. All the Justices concur.*