A01A1634. SEA TOW/SEA SPILL OF SAVANNAH v. PHILLIPS.
(561 SE2d 827)

MIKELL, Judge.

Sea Tow/Sea Spill of Savannah ("Sea Tow") filed suit in state court against Robert L. Phillips seeking recovery for services rendered in connection with the salvage of Phillips' boat. In his answer,

---

Phillips raised as an affirmative defense the court's lack of jurisdiction. After limited discovery, Phillips filed a motion to dismiss on January 25, 2000, arguing that the state court lacked subject matter jurisdiction because the marine salvage action was subject to federal maritime law and within the exclusive jurisdiction of the federal court sitting in admiralty. Thirteen days later, the court granted Phillips' motion. After Sea Tow's subsequent motion to set aside was denied, it appealed to this Court. We reversed the denial of the motion to set aside, because the trial court had failed to provide counsel with notice of the order of dismissal, effectively depriving Sea Tow of the opportunity to seek reconsideration or appeal of the adverse decision. *Sea Tow/Sea Spill of Savannah v. Phillips*, 247 Ga. App. 613, 614-615 (2) (545 SE2d 34) (2001). We directed the state court to set aside and reenter its order. Id. Accordingly, the court reentered the order of dismissal on February 1, 2001. The present appeal followed. We now reverse the dismissal.

1. First, Sea Tow contends that the state court erred in granting Phillips' motion to dismiss, because it did not provide Sea Tow adequate time to respond to the motion. Sea Tow argues that because the court considered matters outside the pleadings, the motion to dismiss was, in fact, a motion for summary judgment; therefore, Sea Tow should have been provided 30 days to respond pursuant to OCGA § 9-11-56 (c). We disagree.

A motion to dismiss for failure to state a claim upon which relief can be granted under OCGA § 9-11-12 (b) (6) will be converted to a motion for summary judgment when it relies on matters outside the pleadings; however, in this case Phillips' motion to dismiss was based on a lack of subject matter jurisdiction, OCGA § 9-11-12 (b) (1), which is a "matter in abatement." *Porter v. Buckeye Cellulose Corp.*, 189 Ga. App. 818, 821 (2) (377 SE2d 901) (1989). We recognize that Phillips brought his motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim; however, his entire argument regarding the latter ground was that the complaint failed to state a claim upon which that particular court could grant relief because the state court was not empowered to grant relief in admiralty matters. Phillips offered as evidence, outside the pleadings, responses to interrogatories by Sea Tow which asserted that its claim was based on "pure salvage with . . . an agreement by the Defendant to pay for the services." The order granting the motion to dismiss was based solely on the issue of jurisdiction. There is nothing in the record to indicate that the trial court relied on evidence when deciding the legal issue raised by the motion to dismiss.

"[J]urisdiction is a subject matter in abatement, not one involving a judgment on the merits." *Cohran v. Jones*, 160 Ga. App. 761 (1) (288 SE2d 80) (1981). See also *Manufacturers Nat. Bank &c. v. Tri-*

*State Glass*, 201 Ga. App. 253, 254 (1) (410 SE2d 808) (1991). "Matters in abatement are not properly the basis for a motion for summary judgment." (Citation omitted.) *Church v. Bell*, 213 Ga. App. 44, 45 (443 SE2d 677) (1994). Thus, Phillips' motion to dismiss was not converted to a motion for summary judgment, and the required response period provided in OCGA § 9-11-56 (c) did not apply.

Contrary to Sea Tow's argument, it is not error for a court to decide a motion to dismiss for lack of subject matter jurisdiction prior to the expiration of the 30-day response period contemplated in Uniform State Court Rule 6.2. That rule provides in pertinent part: "Unless otherwise ordered by the judge, each party opposing a motion shall serve and file a response, reply memorandum, affidavits, or other responsive material not later than 30 days after service of the motion."

In *Kidd v. Unger*, 207 Ga. App. 109 (427 SE2d 82) (1993), we held that it was not error when a trial court decided a similar motion to dismiss before the 30-day response period had expired. That case involved Uniform Superior Court Rule 6.2, which is identical to the state court rule at issue in the case sub judice. We reasoned that "[t]he presence of the conditional language in the rule clearly gives the trial judge discretion regarding the period of time by which a party must respond to a motion in a civil case." Id. at 110-111 (2).

On the other hand, Uniform State Court Rule 6.2 implies that the opponent of a movant can generally count on having 30 days in which to file a response "[u]nless otherwise ordered by the judge." In *Kidd*, the trial court "convened a hearing on the issue." Id. at 110. The scheduling by the trial court of a hearing on a matter in abatement prior to the running of the 30 days could certainly be interpreted as an order shortening the period of time for a response or at least as notice that the opponent should be prepared by the date of the hearing orally to urge legal authority in opposition to the motion. In the case at bar, as best as we can tell from the record, Sea Tow, as the party opposing the motion, had no opportunity to be heard, orally or by brief, prior to the court's ruling.

Although many matters in abatement may be appropriate for an expedited ruling, there are two problems with a court's ruling without hearing from both sides. The first is constitutional. "The fundamental requisite of due process of law is the opportunity to be heard. This right to be heard has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce or contest." (Citation and punctuation omitted.) *Mullane v. Central Hanover Bank &c. Co.*, 339 U. S. 306, 314 (70 SC 652, 94 LE 865) (1950). The second reason is practical. Trial courts and appellate courts greatly improve their chances for avoiding error by listening to both sides of an issue before

making up their minds. The best book about how to be a judge is a long-out-of-print tome called The Trial Judge by Henry T. Lummus, published by The Foundation Press, Inc. in 1937. In it, Judge Lummus, then an associate justice of the Supreme Judicial Court of Massachusetts, counsels that a judge should listen patiently to both sides, even when the arguments are dull.

> For most of us, instantaneous determination of complicated cases is impossible. A moderate degree of mental slowness, or apparent slowness, gives time for reflection, avoids snap judgments, and prevents parties from complaining that they were dismissed unheard.

Lummus, supra at 22.

The losing party in the court below, Sea Tow, was dismissed unheard. However, its first enumerated error complains that the motion to dismiss should have been treated as a motion for summary judgment entitling Sea Tow to 30 days to respond. That enumerated error is not sustained, and we will not disturb the ruling below on that ground.

2. The state court did err in granting Phillips' motion to dismiss the action for lack of jurisdiction. 28 USC § 1333 (1) provides in pertinent part that federal district courts "shall have original jurisdiction, exclusive of the courts of the States, of . . . [a]ny civil case of admiralty or maritime jurisdiction, *saving to suitors in all cases all other remedies to which they are otherwise entitled*." (Emphasis supplied.) Sea Tow contends that the present action may be brought in state court under the "saving to suitors" clause of the statute, which conveys concurrent jurisdiction to state courts over claims as to which an individual would have had a cause of action at common law.[1] We agree.

In *Lancaster v. Casey*, 110 Ga. App. 278, 279-280 (138 SE2d 388) (1964), we held that

> [t]he intention of the statute [28 USC § 1333] was to confer exclusive admiralty and maritime jurisdiction upon the Federal district courts, at the same time leaving to the suitor his

---

[1] Phillips argues that Sea Tow did not raise the "saving to suitors" clause in the trial court and is hence precluded from relying on it now. However, Sea Tow did not have an opportunity to raise any argument prior to the court's ruling on Phillips' motion to dismiss. Furthermore, not knowing that the court had already ruled, Sea Tow filed on February 21, 2000, a brief in which it argued that the state court had subject matter jurisdiction over an in personam claim for salvage. Under Georgia's liberal "notice pleading" system, a litigant is not required to direct a court's attention to the precise constitutional or statutory source of jurisdiction.

> option of seeking redress at common law. *In personam* suits, as distinguished from the *in rem* suits common to admiralty, clearly fall within the "other remedies" mentioned in the statute. The jurisdiction of the subject matter is concurrent and the forum is to be selected at the option of the plaintiff.

(Citation and punctuation omitted.) Id. Furthermore, the United States Supreme Court has recognized that the " 'saving to suitors' clause . . . allows litigants to bring *in personam* maritime actions in state courts." *Offshore Logistics v. Tallentire*, 477 U. S. 207, 222-223 (IV) (106 SC 2485, 91 LE2d 174) (1986). Thus, Sea Tow could elect to pursue an in personam action in state court.

It is unusual for Congress to attempt by statute to grant jurisdiction to state courts in contradiction to the allocation of power prescribed by the United States Constitution. One such allocation is the seemingly exclusive grant of admiralty jurisdiction to the federal courts. U. S. Const., Art. III, § 2. See generally *Maryland Cas. Co. v. Grant*, 169 Ga. 325 (150 SE 424) (1929), cert. denied, *Grant v. Glynn Canning Co.*, 281 U. S. 690 (50 SC 240, 74 LE 1120) (1930).[2] Nonetheless, the validity of the grant of jurisdiction by the "saving to suitors" clause is beyond argument because it was part of the Judiciary Act of 1789, 1 Stat. 76 (1789), a statute enacted by the first Congress. Acts of that Congress concerning governmental organization have traditionally been given extra deference because many legislators in that Congress had also been members of the Constitutional Convention. See Amar, A Neo-Federalist View of Article III: Separating the Two Tiers of Federal Jurisdiction, 65 B.U.L. Rev. 205, 259 (1985). See also *Murdock v. City of Memphis*, 87 U. S. 590, 594 (22 LE 429) (1874). Also, the Judiciary Act of 1789 established the federal district courts as Congress was permitted to do by Art. III, Sec. 1 of the U. S. Constitution, and simultaneously gave concurrent jurisdiction to state courts in admiralty for some remedies, "where the common law is competent to give it." 1 Stat. 76-77.[3] Although the extent of the limited, concurrent jurisdiction of state courts in maritime matters has been exhaustively litigated in the two centuries since 1789, the existence of some form of concurrent state jurisdiction has never been questioned. See Gilmore and Black, The Law of Admiralty (2nd ed. 1975), supra at §§ 6-45 — 6-52.

Phillips relies on *Sasser v. Lester*, 153 Ga. App. 220, 221 (1) (264

---

[2] *Maryland Cas.*, supra, relied on *Southern Pacific Co. v. Jensen*, 244 U. S. 205 (37 SC 524, 61 LE 1086) (1917), a case which recognized the "saving to suitors" clause but held it inapplicable to workers' compensation cases.

[3] The statute was amended in 1948 and 1949 and now reads "saving to suitors in all cases all other remedies to which they are otherwise entitled." 28 USC § 1333. See Gilmore and Black, The Law of Admiralty (2nd ed. 1975), § 1-13.

SE2d 728) (1980) (physical precedent only); however, that case does not hold that federal courts have exclusive jurisdiction over all marine salvage claims. Rather, it states that federal courts "may have exclusive jurisdiction over the establishment and amount of salvage. liens sought by the salvors of ships or cargo" and that federal maritime law generally controls in marine salvage cases. *Sasser* correctly holds that only federal courts have jurisdiction to impose an in rem lien on the salved vessel. But it does not preclude a Georgia court from exercising concurrent jurisdiction, with the federal courts, over the salvor's in personam claim against the owner of the salved vessel.

Moreover, *Sasser* is in accord with well-established law: the rules of decision in a state court action in admiralty will be governed by federal law. As stated by Justice O'Connor in *Offshore Logistics v. Tallentire*, supra at 222-223 (IV):

> The "saving to suitors" clause leaves state courts competent to adjudicate maritime causes of action in proceedings *in personam* and means that "a state, 'having concurrent jurisdiction, is free to adopt such remedies, and to attach to them such incidents, as it sees fit' so long as it does not attempt to (give *in rem* remedies or) make changes in the 'substantive maritime law.'" [*Madruga v. Superior Court of California*, 346 U. S. 556, 560-561 (74 SC 298, 98 LE 290) (1954),] (quoting *Red Cross Line v. Atlantic Fruit Co.*, 264 U. S. 109, 124 [(44 SC 274, 68 LE 582)] (1924)). Stated another way, the "saving to suitors" clause allows state courts to entertain *in personam* maritime causes of action, but in such cases the extent to which state law may be used to remedy maritime injuries is constrained by a so-called "reverse-*Erie*" doctrine which requires that the substantive remedies afforded by the States conform to governing federal maritime standards. Baxter, Choice of Law and the Federal System, 16 Stan. L. Rev. 1, 34 (1963) (referring to *Erie R. Co. v. Tompkins*, 304 U. S. 64 [(58 SC 817, 82 LE 1188)] (1938)). See also *Garrett v. Moore-McCormack Co.*, 317 U. S. 239, 245 [(63 SC 246, 87 LE 239)] (1942); *Stevens, Erie RR. v. Tompkins and the Uniform General Maritime Law*, 64 Harv. L. Rev. 246 (1950).

Additionally, Phillips cites a Florida appellate decision, *O'Neill v. Schoenbrod*, 355 S2d 440 (Fla. App. 1978), which affirmed the dismissal of a salvage claim brought in state court because salvage was "a matter peculiarly within the jurisdiction of the admiralty courts because, inter alia, of the peculiar system awarding the compensation." Inexplicably, *O'Neill* does not address the appellant's argument

that the state court would have concurrent jurisdiction over an in personam action under the "saving to suitors" clause. Regardless of the court's reasoning, *O'Neill* does not provide binding precedent for this Court.

Accordingly, because Sea Tow could maintain an in personam salvage action in a Georgia court, pursuant to 28 USC § 1333 (1), the state court erred in granting Phillips' motion to dismiss.

*Judgment reversed. Blackburn, C. J., and Pope, P. J., concur.*

DECIDED FEBRUARY 1, 2002 —
RECONSIDERATION DENIED FEBRUARY 21, 2002 — 

*Portman & Shehane, James F. Shehane IV*, for appellant.
*Hunter, Maclean, Exley & Dunn, Colin A. McRae*, for appellee.

