## 58379. SASSER et al. v. LESTER et al.

Submitted September 5, 1979 — Decided January 31, 1980.

*David H. Fritts,* for appellants.
*Clark Smith,* for appellees.

Deen, Chief Judge.

1. The basic defenses of the Sassers are abandonment and salvage, both concepts arising under federal maritime law. See 46 USCA 721 et seq. The Gypsy Queen went down in navigable waters. Therefore, even though federal courts may have exclusive jurisdiction over the establishment and amount of salvage liens sought by the salvors of ships or cargo, where the defendant seeks to justify his action and present a defense or counterclaim under maritime law, that law must be given effect. In Pope & Talbot, Inc. v. Hawn, 346 U. S. 406, 409 (74 SC 202, 98 LE 143), where it was contended that Pennsylvania law should be applied in a negligence action brought in a federal district court, it was held: "Even if Hawn were seeking to enforce a state created remedy for this [negligent tort], federal maritime law would be controlling. While states may sometimes supplement federal maritime policies, a state may not deprive a person of any substantial admiralty rights as defined in the controlling acts of Congress or by interpretative decisions of this Court. These principles have been frequently declared and we adhere to them. See *e.g., Garrett v. Moore-McCormack Co.,* 317 U.S. 239, 243-246, and cases there cited. . . [A] state which undertakes to enforce federally created maritime rights [cannot] dilute claims fashioned by federal power, which is dominant in this field." It follows that this court will look to federal maritime law as controlling in these defenses. The argument that the defendants were mere volunteers is without merit.

2. Whether or not denominated a trover action, this

suit is obviously an action for the conversion of personal property. Insofar as salvage is concerned, however, the rules of maritime law which apply are markedly different from those usually brought to bear on the subject of assuming dominion over the property of another. " 'There is, however, no inflexible rule that salvors must take the property saved to the nearest convenient port, or retain the property for adjudication at the first port at which it arrives in safety. . . In all their proceedings, they should act in good faith, and with reasonable skill and judgment; and, while they are entitled to protect their own interests by proper means, they must not forget or disregard the interests of the owners of the property saved.' " Lambros Seaplane Base v. The Batory, 215 F2d 228, 234 (9) (1954). In that case an action for damages in federal court was met with a cross-libel for salvage and it was held that "the merits of Gdynia's claim for salvage in effect disposes of the issues raised by Lambros' libel for damages." Id., p. 237. We feel from all the evidence in the case before us that a jury question was presented in the damage suit, but only as to the actual value of the property, and that the grant of punitive damages against the defendants was not justified. Nothing contradicts Sasser's testimony that shortly after the Gypsy Queen was left on the sandbar, without any signs to indicate that the owner intended to return or any notice of where he could be reached, a storm arose which devastated the boat (already unable to float because of the hole in its hull), and that the engines were "wallowing" in the sand and being destroyed by the action of sand and tide. Lester himself testified that he had abandoned all thought of rescuing the ship, but that he did intend to get the engines off. However, nothing on the wreck would have notified others of this contention. Salvors are not liable except for gross negligence or wilful misconduct. P. Dougherty Co. v. United States, 207 F2d 626 (13) (3d Cir.) (1953). One who in good faith takes possession of the damaged property is not a trespasser. Rickard v. Pringle, 293 FSupp. 981 (2) (E. D. N. Y.) (1968). That the owner of a boat sunk in navigable waters has an immediate duty to mark it, see Ingram Corp. v. Ohio River Co., 382 FSupp. 481 (1973), aff. 505 F2d 1364; United States v. Raven, 500 F2d 728; In Re: Marine Leasing Services, 471

F2d 255 (5th Cir. C.A. 1973). On the other hand, of course, an undue withholding of the salved property will work a forfeiture of the lien which otherwise accrues. The Copperfield, 268 F 77 (3) (S. D. Fla.) (1920). The property had been wrecked for 18 days before the defendant made any effort to retrieve it, and nothing in the record reveals at what time the defendants were informed of the identity of the owner. We there find against the claim for punitive damages under the evidence in this record.

3. Error is assigned on a pretrial ruling of the court granting a motion of the plaintiffs which stated it expected the defendant to attempt to prove that plaintiffs had received insurance benefits as a result of "the incident giving rise to the litigation" that any "inference [sic] to such insurance benefits" would be irrelevant and prejudicial to the issues presented, and requesting an order suppressing such evidence. We consider this ruling to be error requiring reversal. It is true that evidence of *liability* insurance for the benefit of one charged with negligence is usually refused, the rationale being that the evidence is irrelevant and prejudicial because it suggests to the jury that the wealth of the insurer is available to assuage the tort. *Southeast Transport Corp. v. Hogan Livestock Co.,* 133 Ga. App. 825 (212 SE2d 638) (1975). Where, however, the existence of insurance becomes relevant for some other reason, it should be admitted. See *Petway v. McLeod,* 47 Ga. App. 647 (3) (171 SE 225) (1933). In this case there was an admitted abandonment by the owner of the wrecked houseboat, except for the objects removed by the defendant. As to these he claimed a right of possession. The defendant urges that full insurance value had been paid to the plaintiffs in this case, as shown by a colloquy which took place outside the hearing of the jury, and that had they been allowed to pursue a proper cross examination they would have established that the defendants had in fact been paid for a total loss, in which case they would have no right of possession of the rebuilt engines, and certainly none superior to the salvage rights inhering in the defendants. It is further argued that had he been allowed to produce evidence, assuming the payment to have been on a total loss basis, the present action would be an unjust enrichment of the plaintiff, and

a third reason for holding this evidence admissible would be its possible effect in militating for or against the abandonment defense.

The usual reasons for excluding insurance coverage do not apply in this case. Liability insurance is not involved. The right to possession of integral parts of the houseboat is at issue, and the burden is on the plaintiff to establish it. In all fairness the defendants should be allowed to prove, if they can, that the plaintiffs in this action for conversion of their property no longer had a right of immediate possession.

4. As the case is to be tried again, the remaining enumerations of error are not passed upon.

*Judgment reversed. Shulman, J., concurs. Carley, J., concurs in the judgment only.*