**METROPOLITAN DADE COUNTY,**
**Plaintiff,**

v.

**ONE (1) BRONZE CANNON, et al., Defendants.**

**No. 82–310–CIV–EPS.**

United States District Court,
S. D. Florida,
Miami Division.

April 23, 1982.

Jack M. Coe, William Y. Sayad, Teresa L. Mussetto, John C. Seipp, Jr., William P. Harris, Miami, Fla., for claimants.

## MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS

SPELLMAN, District Judge:

THIS CAUSE came before the Court on Plaintiff's Emergency Motion for a Temporary Restraining Order and Preliminary Injunction. The parties entered into a stipulation that the cannons would not be removed pending this Court's determination on the Preliminary Injunction. Thereafter, Plaintiff filed a complaint in admiralty and the Claimant, Leonard Wisniewski, moved to dismiss the complaint.

### STATEMENT OF THE FACTS

In July of 1970, Marine Exploration Company Inc., [Marine Company], entered into an agreement with the Haitian government to conduct treasure salvage operations off the coast of Haiti. As a means of financing this operation, Marine Company entered into a limited partnership with a corpora-

tion formed to finance the expedition, Haitian Ventures, Inc. Most of the principals and/or shareholders of Haitian Ventures, Inc., but not all, were also principals or shareholders of Marine Company. Moreover, some of the shareholders of Haitian Ventures, Inc., also physically participated in the treasure salvage expedition in question here.

Sometime in September, 1971, a salvage expedition took place off the coast of Haiti. During this expedition, two bronze cannons were discovered. Marine Company, because of its practical experience in treasure salvage operations became the custodian of the cannons and acted as trustee for all the salvors involved in the expedition in securing an agreement with the Historical Museum of Southern Florida for display.

Since the cannons remained on display at the Historical Museum, none of the claimants disputed the disposition of the cannons. However, on July 6, 1978, Leonard Wisniewski filed suit against the Historical Museum in state court. Wisniewski based his action on a replevin theory, claiming he had purchased the cannons from the president of Marine Company (a Mr. Zepetas). Mr. Zepetas purported to sell a 100% interest in the cannons for the alleged price of $5,000.

Originally, the Historical Association sought to bring suit in Federal Court on a interpleader theory, naming the Republic of Haiti, Leonard Wisniewski, Marine Explorations Company, Inc. and Haitian Ventures, a dissolved Florida corporation as defendants. The District Court (Hoeveler, J.) declined to exercise jurisdiction on the basis of comity and abstention. 78–3222–CIV–WHM.

In the state trial court, the Haitian government intervened as a party defendant, and asserted their desire to have the cannons remain on display in the Dade County Museum. The Trial Court issued a writ of replevin, which was dissolved following a hearing on defendants' motion to dissolve. On appeal, the Third District Court of Appeals reversed and remanded the action with directions to enter a judgment of replevin in favor of Wisniewski.

Basically, Wisniewski's claim derives from his being the purchaser and assignee from the Marine Company which loaned the cannons to the Historical Association as a bailee to exhibit them with the understanding that the cannons would be returned on demand. The government of Haiti based its claim on, among other things, an alleged contract with Marine Company which allocated 25% interest to the Haitian government in anything found during the exploration in exchange for exploration rights in Haitian territorial waters.

Meanwhile, on February 5, 1982, Dade County acquired an interest in the cannons through the donation of Lloyd J. Bell, a cosalvor of the cannons. Mr. Bell donated his interest in the cannons to Dade County because of his desire that the cannons be preserved for the benefit and enjoyment of all the residents of Dade County, Florida. Dade County also alleges that other cosalvors are willing to donate their interests to them. Apparently, Dade County believes that the historical valuable cannons will not be preserved if delivered to Mr. Wisniewski. The cannons are believed to contain a percentage of gold alloy estimated to be worth in excess of $50,000. The concern is that the cannons will be melted down for the gold.

In addition, it appears that on February 18, 1982, the cannons were impounded by Federal Marshals at the Museum pursuant to a writ of execution on a judgment entered against Marine Company in *Pan American Bank v. Oil Screw, Denise, Tracor Marine, Inc. and Tug Tami W. etc., et al.*, 77–1618–CIV–JE, 77–254–CIV–JE and 77–283–CIV–JE. T.H.E. Investment Co., a Massachusetts corporation, is the successor in interest to the prevailing party in the above-styled suits. It is not clear from the record just what the above suit involved, but T.H.E. Investment Co. has filed a response, as judgment creditor of the Marine Company and wants the Historical Association of Southern Florida to be appointed custodian of the cannons until the court can resolve this matter.

On March 8, 1982, Wisniewski filed a motion to dismiss Metropolitan Dade County's complaint in this action. Wisniewski characterized this suit as an attempt to litigate through the ruse of admiralty law what is a complaint in interpleader to determine owners which was expressly dismissed by Judge Hoeveler in 1978, case number 78–3222–CIV–WMH. Claimant, Wisniewski also asserts that this action is barred by 46 U.S.C. § 730 which provides:

> A suit for the recovery of remuneration for rendering assistance or salvage services shall not be maintainable if brought later than two years from the date when such assistance or salvage was rendered, unless the court in which the suit is brought shall be satisfied that during such period there had not been any reasonable opportunity of arresting the assisted or salved vessel within the jurisdiction of the court or within the territorial waters of the country in which the libelant resides or has his principal place of business.

Relying on the above language, Wisniewski contends that since the cannons have been in the possession of the Historical Museum since September, 1972, the time for bringing this action has expired. Lastly, Claimant, Wisniewski, contends that this court lacks jurisdiction. Specifically, he asserts that based on 28 U.S.C. § 1333 this court does not have subject matter jurisdiction. The statute states in pertinent part that:

> The district courts shall have original jurisdiction, exclusive of the courts of the States, of:
>
> (1) Any civil case of admiralty or maritime jurisdiction, *saving to suitors in all cases all other remedies to which they are otherwise entitled.*
>
> (2) Any prize brought into the United States and all proceedings for the condemnation of property taken as prize. [Emphasis Added].

Wisniewski claims that the saving to suitors language in 28 U.S.C. § 1333 enables maritime litigants to pursue available common law remedies, if they prefer them to those supplied in admiralty. *Pacific Far East Line, Inc. v. Ogden Corp.*, 425 F.Supp. 1239 (D.C.N.D.Cal.1977). Based on the above reasoning, Wisniewski pursued an action for replevin in state court, received a writ of replevin and he now claims that should be the end of it.

In light of the above situation, there are several issues to be decided. Those issues are as follows:

(1) Whether this court lacks subject matter jurisdiction because pursuant to the saving to suitors language in § 1333, all rights to possession were decided under state law in the replevin action?

(2) Whether this is a valid admiralty action or a mere attempt to litigate through the admiralty law what is a complaint in interpleader which Judge Hoeveler has previously dismissed based upon abstention and comity?

(3) Whether 46 U.S.C. § 730 bars recovery in this action?

## I. SUBJECT MATTER JURISDICTION

### A. TITLE 28 U.S.C. § 1333

■ Pursuant to § 1333 the District Courts have original jurisdiction exclusive of the state courts of all cases involving admiralty or maritime claims. As early as 1804, the Supreme Court recognized that salvage claims fall within the confines of federal admiralty jurisdiction. *Mason v. The Blaireau*, 6 U.S. (76 U.S.) 240 (1804); *Treasure Salvors v. Unidentified Wrecked and Abandoned Sailing Vessels*, 640 F.2d 560, 566, n.5 (5th Cir. 1981) [Treasure Salvor III]. The Fifth Circuit in discussing admiralty jurisdiction noted that a very common type of legal claim arising from salvage operations "involves a salvor's assertion of his right to a monetary award which maritime law provides as an incentive to encourage persons to assist distressed or endangered vessels." 640 F.2d at 567. Evidently, a maritime lien is created by the rendering of salvage services, and the salvors "may assert his right to a salvage award either in an *in rem* proceeding against the salved vessel or cargo, or in an *in personam* proceeding against the owner of the salved property." *Id.* Moreover, the award in

such a suit is not limited to the value of the services rendered and may "include a bounty or [award] based upon the risk involved in the operation and the skill with which it was performed." *Id.* (citing 3A M. Norris, *Benedict in Admiralty: The Law of Salvage,* § 235 (7th ed. 1980)).

As applied in this case, the claims are based on the maritime law of salvage and finds. The Plaintiff is asking this court to make a determination of equitable rights in the cannons in question. The Haitian government has an alleged interest in the cannons which were discovered off the Haitian coast. Others who financed and participated in the salvage expedition during which the cannons were raised also may have an interest as salvors. Furthermore, since the courts have indicated that "[a]n in rem action for a salvage award against artifacts recovered from the remains of a centuries old shipwreck states a claim within this Court's admiralty jurisdiction, "*Cobb Coin Company, Inc., v. Unidentified Wrecked and Abandoned Sailing Vessel,* 525 F.Supp. 186 at 203, (D.C.Fla.1981) citing *Platoro Ltd., Inc. v. Unidentified Remains of a Vessel,* 614 F.2d 1051, 1055 (5th Cir. 1980), citing *Treasure Salvors, Inc. v. Unidentified, Wrecked and Abandoned Sailing Vessels,* 569 F.2d 330 (5th Cir. 1978) [Treasure Salvors I] the case is properly before this court. Moreover, this court has *in personam* jurisdiction over the claimants who have brought an action asserting an ownership interest in the cannons.

## B. SAVING TO SUITORS LANGUAGE in § 1333

28 U.S.C. § 1333 gives exclusive jurisdiction to Federal Courts in

"Any civil case of admiralty or maritime jurisdiction saving to suitors in all cases all other remedies to which they are otherwise entitled."

Claimant Wisniewski pursuant to the above language pursued an action for replevin in Florida state court, and now asserts that the writ of replevin he received should be the end of this litigation.

In *Pacific Far East Line, Inc. v. Ogden Corp.,* 425 F.Supp. 1239 (D.C.N.D.Col.1977), the court examined the saving to suitors language of 28 U.S.C. § 1333. Basically the court found that the statute "enables maritime litigants to pursue available common law remedies, if they prefer them to those supplied in admiralty." *Id.* at 1243 (citing *Wunderlich v. Netherlands Insurance Co.,* 125 F.Supp. 877, 880 (D.C.S.D.N.Y.1954)). As noted by the *Ogden* court " 'the saving to suitors' clause 'has long been construed to afford litigants a choice of remedies not forums,' " and that '[i]t is not a remedy in common law courts which is saved, but a common law remedy.' " *Id.* [citations omitted].

The "saving to suitors" clause reserves to suitors in all cases the right of a common law remedy, where the common law is competent to give it." 14 Wright, Miller and Cooper, *Federal Practice and Procedure,* § 3672. This gives the Plaintiff "who has an in personam claim the choice of proceeding in an ordinary civil action," or "bringing a libel in admiralty." *Id.*

A plaintiff who has an admiralty claim for damages for breach of contract has several options: (1) "The claimant may invoke the federal admiralty jurisdiction under the grant of original subject matter jurisdiction 28 U.S.C. § 1333," or (2) "By virtue of the saving to suitors clause he may sue at law in State Court or in Federal District Court. [If however, the plaintiff elects the latter], the requirements of diversity of citizenship and the jurisdictional amount must be satisfied." 14 Wright, Miller and Cooper, *supra,* § 3672. *See Romero v. Bethlehem Steel Corp.,* 515 F.2d 1249 (5th Cir.). The basic reasoning is that suits on maritime contracts are *in personam* and may be brought in Federal Court under the head of diversity jurisdiction. For instance, in *Romero* the court acknowledged that "an action for personal injury cognizable in admiralty may be brought, assuming the existence of some independent jurisdictional base like diversity of citizenship, as a civil suit pursuant to the 'savings to suitors clause' of 28 U.S.C. § 1333," and "the plaintiff is entitled to a jury trial." 515 F.2d at 1252. This com-

mon law or admiralty jurisdiction alternative offered by the saving clause has a major restriction. The alternative is only applicable to *in personam* actions. *In rem* jurisdiction is exclusive in the Federal Courts. The rationale for this being that "a proceeding *in rem* is not a "common law remedy.'" 14 Wright, Miller and Cooper, *supra*, § 3672.

In the leading case *The Moses Taylor*, 4 Wall. (71 U.S.) 411, 18 L.Ed. 397 (1866), proceedings *in rem* and *in personam* were distinguished.

> The distinguishing and characteristic feature of * * * [an in rem] suit is that the vessel or thing proceeded against is itself seized and impleaded as the defendant, and is judged and sentenced accordingly. It is this dominion of the suit in admiralty over the vessel or thing itself which gives to the title made under its decrees validity against all the world. By the common law process, whether of mesne attachment or execution, property is reached only through a personal defendant, and then only to the extent of his title. Under a sale, therefore, upon a judgment in a common law proceeding the title acquired can never be better than that possessed by the personal defendant. It is his title, and not the property itself, which is sold.

*Id.* at 431; Wright, Miller and Cooper, *supra*, § 3672. Moreover, in a later case *Madruga v. Superior Court of California*, 346 U.S. 556, 74 S.Ct. 298, 98 L.Ed. 290 (1954), the Court noted that the deletion of the words "common law" in the enactment of the Judicial Code in 1948 did not narrow the jurisdiction of the state courts. Wright, Miller and Cooper, *supra* § 3672.

> In the words of the *Madruga* Court: Admiralty's jurisdiction is "exclusive" only as to those maritime causes of action begun and carried on as proceeding *in rem*, that is, where a vessel or thing is itself treated as the offender and made the defendant by name or description in order to enforce a lien. * * *
> The proceedings in this California partition case were not *in rem* in the admiral-

ty sense. The plaintiffs' quarrel was with their co-owner, not with the ship. Manuel Madruga, not the ship, was made defendant. Thus the state court in this proceeding acts only upon the interests of the parties over whom it has jurisdiction *in personam*, and it does not affect the interests of others in the world at large, as it would if this were a proceeding *in rem* to enforce a lien. The California court is "competent" to give this partition remedy and it therefore has jurisdiction of the cause of action.

346 U.S. at 560, 561, 74 S.Ct. at 300, 301.

Applying the above to this case, the Plaintiff has named the cannons as Defendants; and, apparently, the state court only determined the right to possession under state law. The underlying question of ownership was never decided. As noted by the state court:

> "In a replevin action the right of immediate possession is the question to be determined, and that right may prevail even against absolute legal title to the property where title and possession have become separated. *Bringley v. C. I. T. Corporation*, 119 Fla. 529, 160 So. 680 (1935). Haiti never possessed the cannons now was given any right to possession by the 'contract,' and its claim to possession must necessarily be an incident of *ownership which was never determined below*. Wisniewski's claim, on the other hand, quite apart from *the unresolved issue of ownership*, is the claim of one who had actual possession so that any attempt by Haiti to impeach his title was irrelevant to the replevin action." *Parramore v. Smith*, 158 Fla. 85, 27 So.2d 670 (1946). [Emphasis Added].

*Wisniewski v. Historical Association of Southern Florida, Inc. and The Republic of Haiti*, 408 So.2d 746, 747–48 (Fla. 3d DCA 1982).

In light of the above, Wisniewski's assertion that the saving to suitors clause relieves this court of jurisdiction is not convincing. As far as this Court can determine, the admiralty claim was never before the state court. The right sought to be

vindicated here is salvors rights which are within the jurisdiction of the admiralty courts. Even if the state court desired to do so, it could not have vindicated the rights in question. *See O'Neill v. Schoenbrod*, 355 So.2d 440 (Fla. 3d DCA 1978).[1]

## II. ADMIRALTY ACTION OR COMPLAINT IN INTERPLEADER

■ Claimant Wisniewski claims "nothing has changed" since the time Judge Hoeveler abstained from exercising federal jurisdiction. In the Court's opinion, this assertion is erroneous. There is no longer any state court action pending, and the final disposition of the state court now appears to threaten federal rights of the cosalvors in the cannons. State court action determined Wisniewski's right to possession under state law, and the Court did not decide the underlying ownership question. In this action, which is different from the earlier action, the maritime litigants are coming forward to invoke this Court's exclusive admiralty jurisdiction. There is no common law remedy to be had.

The Claimant, Wisniewski, asserts that Dade County is attempting "to litigate through the ruse of admiralty law what is a complaint in interpleader to determine owners" which Judge Hoeveler dismissed in 1978. *See* Motion to Dismiss Complaint page 2. As indicated above, this action qualifies as a valid admiralty action. When Judge Hoeveler dismissed the action brought before him, he did not reach the question of jurisdiction. Judge Hoeveler abstained based upon comity. It appears that the Judge's main concern was the congested federal docket. By abstaining, the Judge merely gave deference to an ongoing suit before the state trial court. The court did not abdicate federal jurisdiction but only postponed its exercise. *See* C. Wright, *Law of Federal Courts*, 218–29 (1976).

### III. 46 U.S.C. § 730

■ Claimant, Wisniewski, contends that since the cannons have been on loan to the Historical Museum of Southern Florida since October 17, 1972, this action is barred by 46 U.S.C. § 730. As noted earlier, 46 U.S.C. § 730 imposes a two-year statute of limitations on salvage actions.

The Plaintiff submits that the circumstances of this case weigh in favor of extending the statute of limitations or that the statute of limitations has been waived or tolled. This Court agrees.

There are two cases which have addressed the question of extending or tolling the statute of limitations under 46 U.S.C. § 730. Those cases are *Platoro, Ltd., Inc. v. Unidentified Remains, etc.*, 614 F.2d 1051 (5th Cir. 1980), and *Jackson v. Costa Lines, Inc.*, 490 F.Supp. 393 (D.C.S.D.Fla.1980).

In *Platoro*, a salvage company appealed a judgment dismissing its suit *in rem* to obtain title to the unidentified remains of a Spanish vessel which was abandoned over 400 years earlier and resting on the bottom of the Gulf of Mexico, or in the alternative for reasonable compensation for salvage services in recovering the vessel. The District Court had dismissed the action because in its view Platoro's action was barred by the two-year limitation period set out in § 730.

The salvage operation in *Platoro* was commenced in 1967. The State of Texas enjoined the operation. Thereafter, Platoro and the commissioner agreed to divide the artifacts recovered. After some 19 months it became clear that the state would not honor its agreement. Platoro filed an *in rem* action in Federal Court. The District Court awarded compensation to Platoro. On appeal, the Court remanded the action on the ground the District Court lacked *in rem* jurisdiction because the artifacts were not located within the district when the suit

---

1. In O'Neill, the plaintiff's complaint was dismissed by the Circuit Court, Dade County, for lack of subject matter jurisdiction. On appeal, the District Court of Appeal held "that the trial court correctly dismissed the instant salvage action." 355 So.2d at 440. The Appeals Court based its decision on the ground that salvage is "a matter peculiarly within the jurisdiction of the Admiralty Courts because, inter alia, of the peculiar system awarding the compensation." *Id.*

was filed. The District Court dismissed the action.

The Appeals Court in *Platoro* also noted an Eleventh Amendment problem. On the second attempt by Platoro to obtain permission from the State of Texas to bring suit, the state granted permission. Thereafter, Platoro filed suit and the District Court held the action was barred by the statute of limitations. 46 U.S.C. § 730. The Court of Appeals reversed and remanded. As stated by the *Platoro* court.

> The action which precipitated this appeal was not commenced until July 1977, *more than nine years after the salvage services were rendered.* The artifacts made the subject of the suit *were physically within the Western District of Texas at Austin* since 1969 when plaintiff brought them there from Indiana. Thus, Platoro does not come within the above-quoted language of the tolling provisions of the statute. [Emphasis Added].

614 F.2d at 1054. However, the Platoro court ultimately held that the statute of limitations did not bar Platoro's suit and went on to state:

> Nevertheless, the mere fact that a federal statute providing for substantive relief also sets a time limitation upon the institution of suit under the statute *does not restrict the power of the federal courts to hold that the statute of limitations is tolled under certain circumstances not inconsistent with the legislative purpose.* [citations omitted]

> Judicial power to toll statutes of limitations on equitable grounds was firmly established in *Burnett v. New York Central Railroad,* 380 U.S. 424, 85 S.Ct. 1050, 13 L.Ed.2d 941 (1965).... The *basic question is whether tolling the statute in a particular case is in keeping with the legislative intent* underlying the Act itself. 380 U.S. at 426, 85 S.Ct. at 1053. In noting that statutes of limitations are designated primarily to assure fairness to defendants by preventing the revival of claims that have been allowed to slumber until evidence has been lost and witnesses have disappeared, the Court pointed out

> that *this "policy of repose" is frequently outweighed where "the interests of justice require the vindication of the plaintiff's rights."* 380 U.S. at 428, 85 S.Ct. at 1054–55.

*Id.* [Emphasis Added]

The Court of Appeals in *Platoro* determined the circumstances favored tolling the statute of limitations.

The Court stated:

> Tolling of the statute of limitations under the circumstances here is warranted to allow Platoro an opportunity properly to pursue its claim on the merits. Here, the vessel from which the artifacts were retrieved was located in the Southern District of Texas at the time Platoro's first suit was instituted, and the recovery operations made the basis of the suit took place there. It was not unreasonable for Platoro to assume these facts were sufficient for a determination that the court had proper jurisdiction over the res. In fact, the district court so held, although erroneously. *Platoro Limited, Inc., supra,* 371 F.Supp. at 358–59. It would not be inconsistent with the legislative intent underlying the statute at issue to avoid the injustice that would result from the dismissal of Platoro's claim because it made an erroneous choice with regard to the true location of the subject matter of the suit.

*Id.*

Moreover, the Court found that Plaintiff's initial lawsuit showed "proper diligence on the part of the plaintiff which such statutes of limitation were intended to insure." *Id.* The State of Texas, in 1967, had originally filed suit to enjoin the plaintiff's salvage operations. At that time, Platoro negotiated a settlement agreement regarding division of the artifacts. "When it appeared that the state was not going to honor the agreement, Platoro filed its suit well within the two-year period." *Id.* From that time forward, Plaintiff diligently pursued its claim. In conclusion, the Fifth Circuit held Platoro's claim was not barred by the statute of limitations.

The principles of Platoro were later applied in *Jackson v. Costa Lines, Inc.*, 490 F.Supp. 393 (D.C.S.D.Fla.1980). In *Jackson*, a pilot brought suit claiming an award of salvage for services allegedly performed in salvaging a vessel owned by defendants. Jackson performed salvage services for Costa Rica Lines Inc. In lieu of monetary remuneration, Jackson requested and was allowed to take cruises aboard Costa Lines' vessels. He received about twelve (12) cruises. On February 10, 1978, Jackson wrote Costa Lines requesting that their agreement be placed in writing. 490 F.Supp. at 396. There was some dispute as to the agreement. A representative of Costa Lines, Mr. Clementi, remembered the agreement as allowing Captain Jackson cruise privileges upon request. *Id.* at 396.

> In sum the court found that
> While there was apparently some arrangement for cruise privileges under which the parties operated for several years without difficulty, the terms and conditions of this arrangement are disputed. Indeed, it appears that the parties, in fact, never agreed on the scope of the cruise privileges to be afforded plaintiff, at least not in terms of sufficient definiteness to be capable of enforcement by the Court.

*Id.*

The question of the statute of limitations being either tolled or waived was raised. The court applied the holding of the Fifth Circuit in its *Platoro* decision. According to the *Jackson* court, under certain circumstances not inconsistent with the legislative purposes of the statute, a Federal Court has the power to hold that a statute of limitations has been tolled. *Id.* at 397 (citing *Platoro Ltd., Inc., v. Unidentified Remains of a Vessel*, 614 F.2d 1051 (5th Cir. 1980).

The *Jackson* court concluded:

> 1. Defendants' motion to dismiss this cause for *lack of jurisdiction over the subject matter is denied, as the statute of limitations merely constitutes an affirmative defense and is not jurisdictional.* The Court, therefore, has jurisdiction over the subject matter under its admiralty and maritime powers.

> 2. In so far as the statute of limitations (46 U.S.C. § 730) *constitutes an affirmative defense, defendants have waived it by their conduct in partial performance of the agreement.* From 1974 to 1977, Captain Jackson was granted cruises by the defendants; *it was not until 1978,* when Captain Jackson requested a confirmation of their agreement in writing and the defendants failed to respond, *that problems arose.*

> In the alternative, *the conduct of the defendants in extending cruises in accordance with some agreement* with the Captain *resulted in a tolling of the statute of limitations until such time as it became reasonably apparent to plaintiff that defendants would not adhere to the terms that plaintiff believed to be their agreement.*

*Id.* at 396. [Emphasis Added]

The Court, in reaching this decision, carefully analyzed the purposes of the statutes of limitations: These include:

> (1) the assurance of fairness to defendants by preventing the revival of claims that have been allowed to slumber until evidence has been lost and witnesses have disappeared; and

> (2) proper diligence on the part of the plaintiff in preserving his claim.

*Id.* at 397.

The Court reasoned that neither of these purposes would be disserved by the maintenance of Jackson's action, noting that "[a]s in *Platoro*, plaintiff was not dilatory, he filed this action well within two years from the time he first became aware of the problem with the agreement." *Id.*

Applying the above to the present situation, the cannons in question remained on display pursuant to agreement by the interested parties from 1972 to sometime in 1980. For a brief time the cannons were removed by Mr. Wisniewski pursuant to a writ of replevin and later returned to the museum. On or about July 6, 1978, Mr. Wisniewski filed the replevin action in state court. He claimed that he was entitled to

possession of the cannons pursuant to the purported contract of sale from Marine Company. The agreement between the cosalvors was not threatened with breach until that time.

As pointed out above, the Historical Association sought to bring suit in Federal Court on an interpleader theory, and the District Judge declined to exercise jurisdiction. The state court action concluded at the trial level with the writ of replevin being dissolved and the cannons being returned to the museum. Later, the Appellate Court reversed directing that the trial court enter judgment of replevin for Wisniewski; and rehearing was thereafter denied.

This suit was initiated as a treasure salvage *in rem* action and was brought as soon as the claimants realized their interests were in jeopardy. Notably, the concept inherent in a treasure salvage *in rem* action is that "[t]he filing of such a suit is an open invitation (either at that time or such time as an applicable interest may thereafter arise) for claimants and competing salvors to come before the Court and make their alleged interest known." 525 F.2d at 197. Accordingly, Dade County either as successor in interest to cosalvors of the cannons, or as a claimant in an *in rem* salvage action, brought this action.

Dade County is the alleged successor in interest to those who originally financed the expedition and materially physically participated in the expedition during which the cannons were raised. As cosalvors and claimants under the maritime and admiralty law their alleged interests are protected by this salvage suit in Federal Court. Legal principles peculiar to the law of salvage govern this suit. 640 F.2d at 560.

The problem with this case is that the claimant, Wisniewski, successor in interest to Marine Company is seeking to defeat the federal rights of the cosalvors of the cannons by wholly denying their interest. This has been accomplished thus far by the application of principles in state court which are inconsistent with maritime law. The individual investors and participants were,

for the most part, not given notice of the suit regarding the cannons. Their interests were not protected in the state court by the attempted intervention of the dissolved corporation, Haitian Ventures, Inc., which, incidentally, was not permitted to intervene because it had been dissolved for over three (3) years. Moreover, regardless of the existence of the corporate structure utilized to enable the expedition to take place, or the nonexistence of enforceable contracts, the cosalvors have alleged equitable rights which could only be vindicated in this Court. Further, the state court did not permit James Doyle, the diver who found the cannons, to intervene. The reason for this is that Mr. Doyle had testified to a verbal contract he had with Haitian Ventures, a nonparty, regarding his interest in the cannons. *See* Exhibit F to claimant Wisniewski's response.

■ As indicated in *Jackson*, such a result (as that reached by the state action) is contrary to that which is dictated by federal marine salvage principles. Also, the state court found that the Haitian government's contract with the Marine Company "at most required Marine, in exchange for exploration rights in Haitian territorial waters, to divide 'the sale product of such wrecks' in the proportions of seventy-five percent for Marine and twenty-five percent for the Haitian Government." *See Wisniewski v. Historical Association of Southern Florida, Inc.*, 408 So.2d 746, 747 (Fla. 3d DCA 1982). Such a characterization of the Haitian government's interest was improper pursuant to marine salvage principles. First, it fails to recognize that, where historical invaluable artifacts are involved, an award *in specie*, is appropriate, 525 F.Supp. 186. Second, regardless of the existence or nonexistence of an enforceable contract, assuming the same can be established, this Court must recognize an inherent interest in a sovereign "in ancient artifacts found within her territorial waters—an interest [which] ... arises ... out of recognition that [the sovereign], as trustee for her citizens of the cultural heritage of their state, maintains an interest in all finds of histori-

cal significance within her territory." *Id.* at 216. Finally, this Court has been asked to apply the age-old principle of salvage law that one who seeks to invoke the court's aid in making a salvage claim must come to court with clean hands. It is alleged that the president of Marine Company purported to sell a 100% interest in artifacts, whose historical value is not disputed, to Mr. Wisniewski for the alleged price of $5,000, allegedly in total disregard for others' rights and interests. Therefore, based upon the above, the circumstances favor the tolling of the statute of limitations and granting Dade County the right to have its claims adjudicated, together with all other claimants including the original cosalvors and the Haitian government.

Therefore, having reviewed the record in this cause and being otherwise duly advised, it is hereby,

ORDERED AND ADJUDGED that the Motion to Dismiss be DENIED. Wisniewski's claims shall be filed within ten (10) days.