S02G0973. PHILLIPS v. SEA TOW/SEA SPILL OF SAVANNAH.
(578 SE2d 846)

FLETCHER, Chief Justice.

After voluntarily rescuing a vessel that was in peril on the high seas, Sea Tow/Sea Spill of Savannah, a marine towing service, filed an action in state court against the boat's owner seeking a marine salvage award. The trial court dismissed the complaint, finding that Sea Tow's claim could only be brought in federal admiralty court. The Court of Appeals of Georgia reversed,[1] and we granted certiorari to consider whether Sea Tow could pursue a claim for marine salvage in state court. Because we find marine salvage is a remedy that is within the federal admiralty courts' exclusive subject matter jurisdiction, we reverse the court of appeals's contrary holding. However, we affirm the judgment because we conclude that Sea Tow's complaint states a claim for quantum meruit, which is cognizable in state court.

---

[1] *Sea Tow/Sea Spill of Savannah v. Phillips*, 253 Ga. App. 842 (561 SE2d 827) (2002).

According to the allegations in the complaint, in late May 1998, Robert Phillips abandoned his twenty-five foot sport fisherman boat, the *Oosi Marine*, after it capsized in the Atlantic Ocean, several miles off of the coast of Georgia. A few days later, Sea Tow located and rescued the vessel. Phillips knew that Sea Tow was searching for his vessel. Sea Tow subsequently sued Phillips for $15,000 based on its salvage services. The trial court dismissed the action, holding that Sea Tow's claim was for "pure salvage which may only be prosecuted by an *in rem* action before a federal court sitting in admiralty." In reversing, the court of appeals held that Sea Tow's claim was "essentially a common law claim for *quantum meruit* for services rendered" and could be brought in state court.[2]

## MARINE SALVAGE REMEDY

"The law of marine salvage is of ancient vintage[,]" whose origins "can be traced to the sea laws of Byzantium and the Mediterranean seaport cities."[3] It has three elements: (1) a marine peril that places the vessel in danger; (2) the salvor must provide service voluntarily and not because of an existing duty or special contract; and (3) the salvage effort must be successful or the service rendered must contribute to the success.[4] An award for salvage does more than compensate the salvor for the cost of its services; it includes a bounty that rewards "for perilous services voluntarily rendered, and [serves] as an inducement to mariners to embark in such dangerous enterprises to save life and property."[5]

## FEDERAL ADMIRALTY JURISDICTION

The United States Constitution vests the "judicial Power of the United States" in the federal courts and extends that power "to all Cases of admiralty and maritime Jurisdiction."[6] Federal admiralty jurisdiction, however, has never been exclusive. The Judiciary Act of 1789 provided that the federal district courts had exclusive jurisdiction "of all civil causes of admiralty and maritime jurisdiction . . .

---

[2] *Sea Tow/Sea Spill of Savannah v. Phillips*, No. A01A1634 (Feb. 21, 2002) (order denying motion for reconsideration).

[3] Thomas J. Schoenbaum, *Admiralty and Maritime Law*, § 16-1, at 356 (3rd ed. 2001) ("Schoenbaum, at ___"); see also *R.M.S. Titanic, Inc. v. Haver*, 171 F.3d 943, 960, 962 (4th Cir. 1999) (noting that salvage law was part of the Rhodian Code, which dates to 900 B.C.E.).

[4] *The Sabine*, 101 U. S. 384, 384 (11 Otto 384, 25 LE 982) (1879); *United States v. Ex-USS Cabot/Dedalo*, 297 F.3d 378, 381-382 (5th Cir. 2002); *R.M.S. Titanic*, 171 F.3d at 963; *Schoenbaum*, at 358; 3A Martin J. Norris, *Benedict on Admiralty*, § 2 at 1-4 (7th ed. 1992).

[5] *The Sabine*, 101 U. S. at 384; see also *The Blackwall*, 77 U. S. 1, 14 (10 Wall. 1, 19 LE 870) (1869).

[6] U. S. Const. Art. III, §§ 1, 2.

*saving to suitors, in all cases, the right of a common law remedy, where the common law is competent to give it."*[7] The emphasized language is referred to as the "savings to suitors" clause and appears today in modified form at 28 USC § 1333 (1): *"saving to suitors in all cases all other remedies to which they are otherwise entitled."*[8]

Although Congress has revised the text of the clause over the years, the United States Supreme Court has said that the clause's "substance has remained largely unchanged."[9] The clause likely was inserted to ensure that the state courts' "concurrent power [remained] where it stood at common law."[10]

## SALVAGE CLAIMS IN STATE COURT

Both parties agree that the federal courts have exclusive admiralty jurisdiction of *in rem* salvage claims (i.e. claims against the salvaged vessel as the defendant). Sea Tow contends, however, that state courts have concurrent jurisdiction to hear all *in personam* claims related to maritime matters, including salvage claims (i.e. claims against the vessel's owner as the defendant).[11] In contrast, Phillips argues that, because marine salvage is a remedy unique to admiralty law, it cannot be a common law remedy that was saved to the state courts, regardless of whether it is sought in an *in rem* or *in personam* action. Although federal courts have admiralty jurisdiction over *in personam* salvage claims,[12] there is case law and commentary to support each party's view regarding whether that jurisdiction is exclusive.

---

[7] *American Dredging Co. v. Miller*, 510 U. S. 443, 446 (114 SC 981, 127 LE2d 285) (1994) (quoting the Judiciary Act of 1789, but adding the emphasis).

[8] (Emphasis supplied.)

[9] But see *Lewis v. Lewis & Clark Marine, Inc.*, 531 U. S. 438, 444 (121 SC 993, 148 LE2d 931) (2001) (federal statute expressly places limitation of liability actions within the federal courts' exclusive jurisdiction).

[10] *Lewis*, 531 U. S. at 444 (punctuation omitted).

[11] Cf. *Lewis*, 531 U. S. at 452-453 (federal statute expressly provides the federal courts with exclusive jurisdiction of limitation of liability actions, which are generally *in personam* actions).

[12] *The Sabine*, 101 U. S. at 386; *R.M.S. Titanic*, 171 F.3d at 963; *Treasure Salvors, Inc. v. Unidentified Wrecked and Abandoned Sailing Vessel*, 640 F.2d 560, 566-567 (5th Cir. 1981); see also 28 USC § 1333; Fed. R. Civ. P. Suppl. R. C(1); compare *Romero v. International Terminal Operat'g Co.*, 358 U. S. 354, 368, 371-375 (79 SC 468, 3 LE2d 368) (1959) (maritime and admiralty claims are not covered under "federal question" jurisdiction set forth in 28 USC § 1331 and, accordingly, cannot be removed unless diversity jurisdiction requirements are met); *In re: Chimenti*, 79 F.3d 534, 537-538 (6th Cir. 1996) (a general maritime claim that can be brought in state court cannot be removed to federal court, absent diversity jurisdiction, even though it could have been brought originally in federal court under admiralty jurisdiction).

## CASE LAW

As early as 1840, the Supreme Court held that marine salvage was within the exclusive jurisdiction of the federal courts: "The admiralty is the only court where such a question can be tried; for what other court, but a court of admiralty, has jurisdiction to try a question of salvage?"[13] This Court likewise has held that salvage remedies are within the federal courts' exclusive admiralty jurisdiction:

> The laws of Georgia furnish to suitors no remedy or process which operates purely as a proceeding *in rem*; consequently, that principle in the law of salvage which allows bounties and rewards for perilous service in addition to the actual value of the service cannot be recognized and applied by the courts of the State, but should be treated as matter belonging exclusively to the admiralty jurisdiction of the United States.[14]

Other courts also have held that marine salvage is a remedy that only the federal admiralty courts can grant.[15] Yet, most of these cases have been *in rem* actions, and even the analysis in *Anthanissen* appears premised on salvage as an *in rem* remedy.

Other Supreme Court cases support Sea Tow's theory that state courts have concurrent jurisdiction over all *in personam* maritime claims unless a federal statute says otherwise. In *Madruga v. Superior Court of California*,[16] a case not involving a salvage remedy, the Supreme Court stated that federal courts have exclusive maritime jurisdiction only over *in rem* actions. "Admiralty's jurisdiction is 'exclusive' only as to those maritime causes of action begun and carried on as proceedings *in rem*, that is, where a vessel or thing is itself treated as the offender and made the defendant by name or description in order to enforce a lien."[17] However, the savings to suitors clause "does leave state courts 'competent' to adjudicate maritime causes of action in proceedings '*in personam*,' that is, where the

---

[13] *Houseman v. Cargo of the Schooner North Carolina*, 40 U. S. 40, 48 (15 Pet. 40, 10 LE 653) (1841) (punctuation omitted); see also *Simmons v. The Steamship Jefferson*, 215 U. S. 130, 137 (30 SC 54, 54 LE 125) (1909) (claim for salvage "cognizable exclusively by a court of admiralty of the United States").

[14] *Anthanissen v. Dart*, 94 Ga. 543, 543-544 (20 SE 124) (1894).

[15] See, e.g., *Int'l Aircraft Recovery v. Unidentified, Wrecked and Abandoned Aircraft*, 54 F. Supp.2d 1172, 1177 (S.D. Fla. 1999) ("The salvage of items from navigable waters . . . constitutes the core of the exclusive admiralty and maritime jurisdiction of the United States District Courts."); *Metropolitan Dade Cty. v. One Bronze Cannon*, 537 F. Supp. 923, 926, 929 (S.D. Fla. 1982); *O'Neill v. Schoenbrod*, 355 So.2d 440, 440 (Fla. 3rd DCA 1978).

[16] 346 U. S. 556 (74 SC 298, 98 LE 290) (1954).

[17] 346 U. S. at 560.

defendant is a person, not a ship or some other instrument of navigation."[18] A "state having concurrent jurisdiction is free to adopt such remedies, and to attach to them such incidents, as it sees fit so long as it does not attempt to make changes in the substantive maritime law."[19]

Although we could read the Supreme Court's declaration in *Madruga* as dispositive of the issue before us, it was made in a case involving the partition of proceeds from the sale of a boat under a state statute, not in the context of a salvage award. Furthermore, language in another Supreme Court case casts doubt on whether *in rem* actions are the only remedies exclusive to admiralty jurisdiction.

In *Southern Pacific Company v. Jensen*,[20] the Court was faced with a state workers' compensation statute that applied to an *in personam* action involving a longshoreman killed while unloading a vessel docked in New York City. Finding that the state's statutory remedy conflicted with federal admiralty and maritime law, the Court stated, "[t]he remedy which the [state statute] attempts to give is of a character wholly unknown to the common law, incapable of enforcement by the ordinary processes of any court and is not saved to suitors from the grant of exclusive jurisdiction."[21] Although Justice Stevens has criticized *Jensen* as discredited precedent,[22] a majority of the Supreme Court declined to overrule it in 1994.[23] Thus, under *Jensen*, if marine salvage "is of a character wholly unknown to the common law," then it is within the federal courts' exclusive admiralty jurisdiction.[24]

We have not found any lower court decision that cogently assimilates the seemingly conflicting Supreme Court precedent while addressing whether a marine salvage award can be sought in state court as part of an *in personam* action. While some courts have held that salvage is a remedy available only in federal admiralty court,[25]

---

[18] Id. at 560-561; compare *Garrett v. Moore-McCormack Co.*, 317 U. S. 239, 245 (63 SC 246, 87 LE 239) (1942) ("state courts have concurrent jurisdiction with the federal courts to try actions . . . in personam such as maintenance and cure") with *Bergeron v. Quality Shipyards, Inc.*, 765 F. Supp. 321, 323 (E.D. La. 1991) (citing *Garrett* for the proposition that "[a] common law remedy, of course, is simply any *in personam* remedy.").

[19] *Madruga*, 346 U. S. at 560-561 (punctuation omitted).

[20] 244 U. S. 205 (37 SC 524, 61 LE 1086) (1917).

[21] 244 U. S. at 218.

[22] *American Dredging Co.*, 510 U. S. at 458 (*Jensen* is "just as untrustworthy a guide in an admiralty case today as *Lochner v. New York*, 198 U. S. 45 (1905), would be in a case under the Due Process Clause.") (Stevens, J., concurring).

[23] *American Dredging*, 510 U. S. at 447 n.1.

[24] See also *Offshore Logistics, Inc. v. Tallentire*, 477 U. S. 207 (106 SC 2485, 91 LE2d 174) (1986) (noting that jurisdictional savings clause in Death on High Seas Act may have been added to avoid a judicial finding under *Jensen* that wrongful death statutes were not common law remedies and, therefore, not saved under the savings to suitors clause).

[25] See, e.g., *Cargo of the Schooner North Carolina*, 40 U. S. at 48; *Simmons*, 215 U. S. at

other courts, including the Georgia court of appeals, have adjudicated a party's right to a salvage award when it has been raised as a defense or counterclaim,[26] or when a state statute allows compensation for salvage services.[27]

## LEGAL COMMENTARY

Legal commentators also differ in their views on this topic. In the volume of *Benedict on Admiralty* dedicated to salvage, the author states unequivocally, "[t]he admiralty courts have exclusive jurisdiction in cases of salvage on navigable waters for which a salvage award, based on the elements of a salvage service, is sought."[28] Yet in the same edition of *Benedict on Admiralty*, the author of the volume covering admiralty jurisdiction reaches a different conclusion: The "view . . . taken by Judge Norris in Volume 3A of this treatise [that salvage is within the federal admiralty courts' exclusive jurisdiction] . . . is inconsistent with the general theory stated above that state courts have concurrent jurisdiction over all maritime causes of action provided they proceed *in personam*."[29] The author of another leading treatise notes that "[t]here is authority that the federal courts have exclusive jurisdiction over salvage cases . . . because a salvage award was not a common law remedy . . . [b]ut this would seem to conflict with the principle that a 'common law' remedy is any *in personam* remedy."[30]

## MARINE SALVAGE IS NOT AVAILABLE IN GEORGIA

Having considered the case law and scholarly discussion, we conclude that marine salvage is not a remedy available in Georgia state courts. First, marine salvage is unique to admiralty law and of a character that was wholly unknown to the common law. As Chief Justice Marshall explained only a few years after the savings to suitors clause was enacted, the voluntary action that entitles a person to an award for marine salvage provides no entitlement under the common law for the same acts on land:

---

137; *Int'l Aircraft Recovery*, 54 F. Supp.2d at 1177; *One Bronze Cannon*, 537 F. Supp. at 926, 929; *Brevoor v. The Fair American*, 4 Cas. 71, 73 (D. Pa. 1800); *O'Neill*, 355 So.2d at 440.

[26] See, e.g., *Williams v. Eckert*, 643 P.2d 991, 993-994 (Alaska 1982) (counterclaim to claim for return of vessel); *Sasser v. Lester*, 153 Ga. App. 220 (264 SE2d 728) (1980) (defense to conversion claim).

[27] See *Hunter v. St. Louis & Miss. Valley Transp. Co.*, 25 Mo. App. 660 (1887).

[28] 3A *Benedict on Admiralty*, § 14, at 1-20.

[29] 1 Stephen F. Friedell, *Benedict on Admiralty*, § 123, at 8-13, 8-14 (7th ed. 1992).

[30] Thomas J. Schoenbaum, *Admiralty and Maritime Law*, § 4.4, at 160 n. 4 (citations omitted).

If the property of an individual on land be exposed to the greatest peril, and be saved by the voluntary exertions of any persons whatever; if valuable goods be rescued from a house in flames, at the imminent hazard of life by the salvor, no remuneration in the shape of salvage is allowed. The act is highly meritorious, and the service is as great as if rendered at sea. . . . Let precisely the same service, at precisely the same hazard, be rendered at sea, and a very ample award will be bestowed in the courts of justice.[31]

Because marine salvage grants a right to, and measure for, compensation for a reason that was not recognized at common law, marine salvage cannot be characterized as a "common law remedy" that the "common law is competent to give." Furthermore, even reading the current version of the savings to suitors clause as providing a state court plaintiff greater access to remedies than was allowed under the original 1789 text, marine salvage is not a remedy to which Georgia plaintiffs "are otherwise entitled." Neither the courts of this state nor the legislature has provided for remuneration to a person who voluntarily rescues property from some peril, no matter how laudable or risky his actions. Therefore, we hold that the remedy of marine salvage cannot be pursued in Georgia state courts under the savings to suitors clause.

## *QUANTUM MERUIT*

Although Georgia does not allow recovery for marine salvage, this State does recognize claims for *quantum meruit*: "when one renders service or transfers property which is valuable to another, which the latter accepts, a promise is implied to pay the reasonable value thereof."[32] A plaintiff may bring an *in personam* claim for *quantum meruit* in Georgia's state courts based on events that could also support a claim in federal admiralty court for marine salvage.

"[W]hen the sufficiency of the complaint is questioned," a court must determine "whether the allegations of the complaint, when construed in the light most favorable to the plaintiff with all doubts resolved in the plaintiff's favor, disclose with certainty that the plaintiff would not be entitled to relief under any state of provable facts."[33] The court should deny a motion to dismiss for failure to state a claim "[i]f, within the framework of the complaint," the plaintiff

---

[31] *Mason v. The Blaireau*, 6 U. S. 240, 266 (2 Cranch 240, 2 LE 266) (1804); see also 3A *Benedict on Admiralty*, § 12, at 1-18.

[32] OCGA § 9-2-7.

[33] *Cooper v. Unified Gov't of Athens-Clarke Cty.*, 275 Ga. 433, 434 (569 SE2d 855) (2002).

may introduce evidence that will entitle the plaintiff to the relief he sought. We conclude that, when construed in Sea Tow's favor, the complaint states a claim for quantum meruit. Accordingly, Sea Tow may pursue a claim for quantum meruit and obtain the value of the services it provided.[34] Although Sea Tow may not recover a salvage bounty or reward, the jury may consider the peril of the service Sea Tow provided and the value of the property saved in determining the value of the service Phillips received.[35]

*Judgment affirmed in part and reversed in part. All the Justices concur.*

DECIDED MARCH 24, 2003.

*Hunter, Maclean, Exley & Dunn, Robert S. Glenn, Jr., Colin A. B. McRae, Semmes, Bowen & Semmes, James W. Bartlett III*, for appellant.

*Barnard M. Portman*, for appellee.

---

[34] See generally *Williams v. Crispaire Corp.*, 225 Ga. App. 172, 175 (483 SE2d 653) (1997) (measure of quantum meruit damages is value to recipient, not cost of providing services).

[35] See *Anthanissen*, 94 Ga. at 543-544.