## A09A0980. COOPER/T. SMITH STEVEDORING COMPANY, INC. et al. v. GEORGIA PORTS AUTHORITY et al.

### (686 SE2d 844)

ANDREWS, Presiding Judge.

This is a breach of contract action brought by the Georgia Ports Authority (GPA)[1] against Cooper/T. Smith Stevedoring Company, Inc. and Cooper/T. Smith Corporation (collectively referred to as CTS) to enforce a contract by which GPA leased a gantry crane to CTS to discharge cargo from a ship berthed at the GPA's Ocean Terminal located in Savannah in Chatham County. The contract terms are set forth in a document known as GPA Terminal Tariff No. 5, which provided the rates, rules, and regulations governing various services at the Ocean Terminal, including the GPA's lease of cranes to stevedoring companies for discharge of cargo from ships.[2] It is undisputed that, while CTS was using the crane, it fell over and was destroyed during an attempt to lift cargo from the ship. The GPA and the DAS sued CTS in the Fulton County Superior Court[3] to enforce contract terms which allegedly made CTS liable for the destruction of the crane and for the cost of replacement. CTS appeals from the superior court's order granting motions for partial summary judgment in favor of the GPA and the DAS on liability and the measure of damages, and denying CTS's motion for partial summary judgment on the measure of damages.

As a preliminary matter, we consider the issue of whether federal maritime law or state law governs the dispute over enforcement of the contract. Under the "saving to suitors" clause codified at 28 USC § 1333 (1), state courts have concurrent jurisdiction with the admiralty jurisdiction of federal courts to entertain in personam claims based on maritime causes of action. *Offshore Logistics v. Tallentire*, 477 U. S. 207, 222 (106 SC 2485, 91 LE2d 174) (1986); *Sea Tow/Sea Spill of Savannah v. Phillips*, 253 Ga. App. 842, 847 (561 SE2d 827) (2002) (rev'd in part on other grounds, *Phillips v. Sea Tow/Sea Spill of Savannah*, 276 Ga. 352 (578 SE2d 846) (2003)); *Lancaster v. Casey*, 110 Ga. App. 278, 279-280 (138 SE2d 388) (1964); *Phillips*, 276 Ga. at 353-356 (recognizing concurrent state jurisdiction over in personam maritime actions, but finding that Georgia courts have no jurisdiction over marine salvage claims under the

---

[1] The Georgia Department of Administrative Services (DAS) was also a named plaintiff.

[2] The Terminal Tariff was promulgated by the GPA under regulations of the Federal Maritime Commission at 46 CFR Part 525. The Tariff is also regulated by The Shipping Act of 1984 (46 USC § 40101 et seq.) as amended by the Ocean Shipping Reform Act of 1998. Pub. L. No. 105-258, 112 Stat. 1902 (1998).

[3] Although CTS's answer pled improper venue and inconvenient forum as defenses, those issues are not raised in this appeal.

"saving to suitors" clause). The present in personam claim against CTS for money damages is a maritime cause of action because it is based on a contract directly related to a maritime service or transaction — the lease of a crane to a stevedoring company to discharge cargo from a ship berthed at the GPA's Ocean Terminal. *Norfolk Southern R. Co. v. Kirby*, 543 U. S. 14, 22-25 (125 SC 385, 160 LE2d 283) (2004); *Maryland Port Administration v. SS American Legend*, 453 FSupp. 584, 589 (D. Md. 1978). Although Georgia courts have concurrent jurisdiction over this cause of action,

> the extent to which state law may be used to remedy maritime injuries is constrained by a so-called "reverse-*Erie*" doctrine which requires that the substantive remedies afforded by the States conform to governing federal maritime standards. Baxter, Choice of Law and the Federal System, 16 Stan. L. Rev. 1, 34 (1963) (referring to *Erie R. Co. v. Tomkins*, 304 U. S. 64 [(58 SC 817, 82 LE 1188)] (1938)). See also *Garrett v. Moore-McCormack Co.*, 317 U. S. 239, 245 [(63 SC 246, 87 LE 239)] (1942); Stevens, Erie RR. v. Tomkins and the Uniform General Maritime Law, 64 Harv. L. Rev. 246 (1950).

*Offshore Logistics*, 477 U. S. at 223; *Sea Tow*, 253 Ga. App. at 847. "A 'state having concurrent jurisdiction [under the saving to suitors clause] is free to adopt such remedies, and to attach to them such incidents, as it sees fit so long as it does not attempt to make changes in the substantive maritime law.' " *Phillips*, 276 Ga. at 356 (quoting *Madruga v. Superior Court of California*, 346 U. S. 556, 560-561 (74 SC 298, 98 LE 290) (1954)); see *Hines v. Ga. Ports Auth.*, 278 Ga. 631, 632 (604 SE2d 189) (2004).

Expounding on these principles, the Supreme Court explained that, "[w]hen a contract is a maritime one, and the dispute is not inherently local, federal law [rather than state law] controls the contract interpretation." *Norfolk Southern*, 543 U. S. at 22-23. Under the two step analysis employed in *Norfolk Southern*, once it is determined in the first step that the contract by its nature and character is a maritime contract, then the second step analyzes whether federal or state law governs its interpretation.

> Having established that [the contract is maritime in nature], then, [the court] must clear a second hurdle before applying federal law in [its] interpretation. Is this case inherently local? For not "every term in every maritime contract can only be controlled by some federally defined admiralty rule." *Wilburn Boat Co. v. Fireman's Fund*

*Ins. Co.*, 348 U. S. 310, 313, 99 LE 337, 75 SC 368 (1955) (applying state law to maritime contract for marine insurance because of state regulatory power over insurance industry). A maritime contract's interpretation may so implicate local interests as to beckon interpretation by state law. See *Kossick [v. United Fruit Co.*, 365 U. S. 731, 735 (81 SC 886, 6 LE2d 56) (1961)]. . . . But when state interests cannot be accommodated without defeating a federal interest . . . then federal substantive law should govern. See [id. at 739]. . . .

[The] touchstone is a concern for the uniform meaning of maritime contracts. . . . Article III's grant of admiralty jurisdiction [to federal courts] "must have referred to a system of law coextensive with, and operating uniformly in, the whole country. It certainly could not have been the intention to place the rules and limits of maritime law under the disposal and regulation of the several States, as that would have defeated the uniformity and consistency at which the Constitution aimed on all subjects of a commercial character affecting the intercourse of the States with each other or with foreign states." *American Dredging Co. v. Miller*, 510 U. S. 443, 451, 127 LE2d 285, 114 SC 981 (1994) (quoting *The Lottawanna*, 88 U. S. 558, 21 Wall. 558, 575, 22 LE 654 (1875)) [(punctuation omitted)]. See also . . . *Romero* v. *International Terminal Operating Co.*, 358 U. S. 354, 373, 3 LE2d 368, 79 SC 468 (1959) ("[S]tate law must yield to the needs of a uniform federal maritime law when [the] Court finds inroads on a harmonious system[,] [b]ut this limitation still leaves the States a wide scope").

*Norfolk Southern*, 543 U. S. at 27-28; see Robert J. Gruendel & Angelique M. Crain, The Maritime Contract and Admiralty Jurisdiction: Recent Developments Help Clarify an Inherently Confused Landscape, 77 Tulane L. Rev. 1235 (2003).

The trial court and the parties below applied only state law to the maritime contract at issue without consideration of federal maritime law. Accordingly, we vacate the trial court's ruling on the motions for partial summary judgment and remand this case to the trial court with direction that the motions be reconsidered to determine the application of federal and state law in accordance with this opinion.

*Judgment vacated and case remanded. Miller, C. J., and Barnes, J., concur.*

DECIDED NOVEMBER 16, 2009.

*Mabry & McClelland, James W. Scarbrough*, for appellant.

*Thurbert E. Baker, Attorney General, George S. Zier, Assistant Attorney General, Rumsey & Ramsey, Austin L. Ramsey III, Robins, Kaplan, Miller & Ciresi, R. Dennis Withers, Brennan, Harris & Rominger, Thomas L. Bass, Jr., Sandra Vinueza Foster*, for appellees.